Seven of the eight forced heirs of Joseph Smiley and his deceased wife brought this suit against Mary Sanchez Smiley, now Vampran, the former wife of Andrew Smiley, the other heir now deceased, and against John L. Picou to annul two tax deeds to 25 acres of land in Livingston Parish; one made in 1925 to cover the State and Parish taxes on the property for 1924 and the other made in 1926 to cover the taxes for 1925, both tax deeds being made to John L. Picou; also to set aside and annul an act of sale in January, 1928, covering said property by Picou to Mrs. Vampran, the former wife of Andrew Smiley.
It is alleged that after the death of Joseph Smiley in 1920 and the death of his wife in 1923, Andrew Smiley, the oldest brother, took charge of the property and exercised complete control over it, sold pine straw from the land, sold the cattle and removed the house from the land and placed it on his own land; that while he had charge of said property, he permitted it to be sold for taxes to John L. Picou; that two or three years after said tax sales, Picou attempted to transfer the property to the wife of said Andrew Smiley, the other defendant in this suit, for a purported consideration of $250 cash, with the recitation in the deed that she was purchasing the property with her own separate and paraphernal funds. It is alleged that the tax sales and the purported sale from Picou to the wife of Andrew Smiley were pure simulations, and that the tax sale and subsequent transfer of the property by Picou to Mrs. Smiley were part of a conspiracy to obtain title to the property for the benefit of Andrew Smiley and his wife and to defraud petitioners as the other seven heirs to the property. They pray that the tax sales and transfer from Picou to Mrs. Smiley, now the wife of Vampran, be set aside and cancelled, and that they be recognized as owners of the property in indivision.
The answer of Picou and Mrs. Vampran is the same; they admit the sales, but aver that the sales were good and valid and made in good faith. They pleaded the prescription *Page 163 
of one, three, five and ten years. The trial judge rendered judgment in favor of plaintiffs as prayed for, and Mrs. Vampran alone has appealed.
The evidence shows that Andrew Smiley and his wife lived on this property after Joseph Smiley died for some three years or more. Some of the present plaintiffs were then minors and lived with their mother until she died in 1923. There is also testimony to the effect that Andrew Smiley sold several head of cattle belonging to the heirs. He went with Picou at the time the property was bought in at tax sale by Picou. These two men were relatives and neighbors. Andrew Smiley moved the houses off the land and placed them on some land belonging to him or his wife.
When Picou made the deed to the wife of Andrew Smiley in 1928, the latter went along, and, as Mrs. Smiley (now Mrs. Vampran) admits, she did not have a thing to do with it. She claims that she paid $250 recited in the deed as consideration to Picou of the proceeds of the sale of cattle which she got from her parents. Yet she admits that she got only one cow from her father before she married. While Picou states that he received this money from Mrs. Smiley, his testimony and his acts are not very impressive. He testified that he did not know what was on the land when he sold it to Mrs. Smiley. He did not have enough interest in the property to ascertain what was on it when he sold it. Moreover, he stated to some of the plaintiffs, according to the testimony of at least two of them, that Andrew Smiley asked him to buy in the property at tax sale and he would buy it back, or words to that effect. There is also testimony to the effect that Andrew Smiley told some of his brothers and sisters that he wanted to clear up the title to the property so it could be divided up among the heirs, and led them to believe that he had bought in the property, the other heirs not finding out that the title was made in the name of Mrs. Andrew Smiley until a year or two before this suit was filed.
It is well settled that the adjudication to one of several joint owners of property adjudicated at a tax sale does not divest the other co-owners of their interest in the property. The adjudication only operates as a payment of the taxes for the joint benefit of the co-owners, with the right on the part of the adjudicatee to be re-imbursed the amount he paid. Bossier v. Herwig et al., 112 La. 539, 36 So. 557. Picou was merely an interposed party, and the adjudication legally and in reality was to Andrew Smiley, a co-owner, and his purchase inured to the benefit of his co-heirs subject to his right to demand from them re-imbursement for the amount paid. Moreover, Andrew Smiley at the time of the tax sales was in charge of the property and had received certain funds from the sales of the property belonging to the heirs, and was legally bound to protect the interests of his co-heirs from the tax sales. Mrs. May Chestnut et al. v. Snell et al., 2 La.App. 746.
The facts and circumstances connected with the tax sales and the transfer shortly thereafter of the property by Picou to Mrs. Smiley so strongly indicate that Picou was merely an interposed party and that the property was actually purchased for the benefit of Andrew Smiley, a co-owner, that the defendant makes no serious effort in this court to uphold the sales on the ground that they were made in good faith but relies principally on the plea of three (now five) years prescription to protect the tax sales.
While the purchase of property at tax sale by a co-owner inures to the benefit of the other co-owner, giving the latter a right to be re-invested with title on re-imbursing the other co-owner his share of the taxes, this right is an equitable one and must be exercised within a reasonable time. If the right is not exercised in a reasonable time and third parties acquire an interest in the property on the strength of the recorded tax title, without any knowledge of the equitable interest of the co-owner to become re-invested with his title on re-imbursing his co-owner for the taxes paid by him, such third person will be protected and can plead the prescription provided for in Article 10, Section 11, of the Constitution against an attack on the tax sale. Cooper v. Edwards, 152 La. 23, 92 So. 721; Ramsey et al. v. Frost-Johnson Lumber Company, 168 La. 657, 123 So. 114.
In the present case, no third persons acquired in good faith any interest in the land on the strength of the recorded tax deeds. As already stated, the purchase of the property by Picou at tax sale and the subsequent transfer by him of the property to Mrs. Smiley had the same effect as though Andrew Smiley himself had been the adjudicatee, and the other heirs have the right to be re-invested with their interest in the *Page 164 
property on reimbursing the heirs of Andrew Smiley the taxes paid by him, if it is shown in a proper accounting that they are due these heirs any amount.
It is not shown that plaintiffs have been guilty of laches in bringing their action for the reason that no rights of third persons have been affected by reason of the delay. Moreover, the plaintiffs were led to believe up to a short time before they filed this suit that Andrew Smiley had bought in the property at tax sale to clear up the title and that he was holding the property to be divided among the heirs.
The judgment decreed the plaintiffs to be the owners of the property in indivision and ordered the tax sales and the sale from Picou to Mrs. Smiley cancelled and erased from the records. Plaintiffs own only a seven-eighths interest in the property and the judgment will have to be amended in that respect.
For the reasons assigned, it is ordered that the judgment appealed from be amended by decreeing the plaintiffs to be the owners of an undivided one-eighth interest each in and to the property described in the judgment; that the tax sales and the sale from Picou to Mrs. Mary Sanchez Smiley, described in said judgment, be cancelled, set aside and erased from the records, insofar as the same affect the undivided seven-eighths interest of the plaintiffs in the property; that in all other respects, the judgment be affirmed at the cost of appellant in both courts.