Plaintiff sued on open account, made up of charges for the sale price of oil field fittings, supplies and equipment, during the months of July and August, 1947, amounting to $329.05. It is alleged that defendant is engaged in the business of producing oil; that at the time said sales were made he owned producing oil wells on two leases covering lands in Bossier Parish, Louisiana; that when said account arose and for some time prior thereto, defendant had in his employ one G. A. Oswald, whose duties "consisted of taking care of and supervising the operation and production from said leases, and particularly the maintenance of the machinery and equipment" necessary to procure oil from said wells; that the fittings, equipment, etc., were purchased by Oswald, as defendant's agent, were delivered to Oswald, and that he made deliveries thereof to the lease sites; and that the same were used in the maintenance and operation of machinery employed to procure production.
In the alternative, plaintiff alleged that should it be found and held that said Oswald was without express authority to make the purchases on defendant's account, that defendant is now estopped to make denial thereof because invoice covering each purchase was promptly mailed to and received by him and that at no time, while Oswald was in his employ did he repudiate or protest Oswald's authority to thus act for him and on his behalf.
Defendant denies liability for any part of the account sued on. He admits that for the months of July and August, 1947, he did have said Oswald in his employ on the mentioned leases but denies that he was authorized to commit defendant to liability for purchases of the kind and character herein described. He also denied that the purchased articles were used in the maintenance and operation of the leases, and avers that when he became aware that plaintiff was sending him the mentioned invoices he immediately notified plaintiff that Oswald was without authority to purchase the merchandise described therein and have same charged to him.
Plaintiff prevailed in the lower court and judgment was awarded it for the full amount of the account sued upon. Defendant appealed.
There is no dispute as respects delivery of the various articles of merchandise to *Page 813 
Oswald, nor as to the reasonableness of the prices charged therefor. The implication that arises from defendant's contentions and position is that the merchandise was, in whole or part, used by Oswald in the development of a mineral lease he acquired a brief time prior to leaving defendant's employment.
Prior to July 2, 1947, defendant had not arranged for a line of credit with plaintiff, whose sales department is located in Bossier City, across Red River from Shreveport, but he, and also Oswald for him, had made cash purchases from plaintiff. Defendant's office was in Shreveport. Oswald testified that often when he would come to Shreveport to procure orders or cash from defendant to purchase needed merchandise to keep the wells producing at maximum capacity, he was unable to contact him as he was out of the office a great deal pursuing another line of business. Oswald further testified that he personally knew the personnel in plaintiff's place of business, and had, over many years, bought from them; that one or more of plaintiff's salesmen requested him to do business with them and suggested that he apply for a line of credit for defendant, not exceeding $500, and that for convenience, at least, he did so; that in each instance when he made a purchase an invoice of the merchandise purchased would be made out by a salesman, showing the character of the articles purchased, price thereof, date of purchase, by whom purchased, and for whose account; that some of these invoices were promptly put into defendant's hands while others were deposited in a box in the house occupied by Oswald and which was on one of the leases. He further testified that immediately after arranging for said credit, he informed defendant thereof and received his thanks. He also testified that all of the purchased merchandise was either used in the operation and maintenance of the wells or was on the lease when defendant discharged him on August 19, 1947.
Defendant's testimony supports his answer. He admits receiving some of the mentioned invoices and says he immediately went to plaintiff's sales department and informed the salesmen there and also plaintiff's district manager, in his office in the City of Shreveport, that Oswald had no authority to make the purchases on his account, but he did not on either occasion definitely say he would not pay for them. We strongly incline to the belief that defendant did this only after Oswald was dismissed by him, as plaintiff's district manager and one of its salesmen testified that after Oswald was dismissed defendant informed them of this fact and told each of them to not sell to him any more merchandise for defendant's account. They each affirm that this was the first time defendant questioned Oswald's right to purchase for his account.
It appears that defendant was dubious as to whether the merchandise, in whole or part, was purchased for use on his leases, and in an effort to enlighten himself thereon had check made by one of his employees named Faircloth. However, he did not produce Faircloth as a witness in his behalf. This man's whereabouts was known to defendant at the time of and prior to trial. He was in the state not over one hundred miles from Shreveport. An inference arises that had he been summoned and had given testimony in the case, it would not have been favorable to defendant's cause.
It is definitely shown that some of the merchandise charged to defendant was brought to one of the leases by Oswald's son, but not being of the grade desired, at Oswald's request, it was soon thereafter picked up by one of plaintiff's employees and the charge entry thereof on the invoice erased. Defendant was present when the merchandise was picked up and talked to the man who did so. Evidently he then became aware of the true facts of this transaction.
Defendant was engaged in the real estate business, in addition to oil production, and left largely to Oswald the operation and maintenance of eighteen producing wells he owned in Bossier Parish. He visited the leases only once or twice per week and then for brief period. Plaintiff's salesmen knew Oswald's business relationship with defendant and knew the kind and character of merchandise that was required to maintain producing wells; not having received from defendant any protest as to *Page 814 
Oswald's authority to purchase for his account, prior to his discharge, they, naturally, continued to sell to him in due and regular course of business.
In regard to the suggestion advanced by defendant that some or all of the merchandise, the price of which is sued for, was diverted to wells or leases in which Oswald had a personal interest, it is pertinent to note that the drilling of an oil well on his lease began several days after he was discharged by defendant. The well was drilled under contract with another party. These facts, especially that of time, rather effectively repel the suggestion above mentioned.
The outcome of this case turns upon questions of fact and the credibility of the witnesses who gave testimony in the case. The trial judge closely observed the progress of the trial and several times interrogated witnesses touching their knowledge of pertinent facts. We are of the opinion that he correctly resolved these questions in plaintiff's favor; and, for the reasons herein given, the judgment from which appealed is affirmed with costs.