YARRUT, Judge.
Plaintiff, as administrator of the succession and as attorney-in-fact of the widow and children of Benjamin Leiser, sues to annul the confirmation of a tax title to certain real estate in favor of defendant Lagasse, joining L. P. Smith as co-defendant, charging Lagasse was acting as agent and interposed party for Smith to defraud Leiser of a half interest therein, Smith and Leiser being co-owners at the time of the tax sale, described as follows:
“That Portion Of Ground, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in any wise appertaining, situated in the Town of Shrewsbury, forming part of that tract known as Hessmer Farms, and designated by the Nos. 107, 108, 109, 110, 115, 116, 117, 118, 123, 124, 125, 126, 131 and 132 on a sketch of W. A. Blalock, C. E., dated July 15, 1919, being a portion of a certain portion of ground situated in the Parish of Jefferson, measuring 840 feet front on Cypress Street and extending in depth to the edge of the present shore line of Lake Pontchartrain, being bounded on the East by Arnoult Road in the Village of Shrewsbury, and on the West by lands of J. Cleary Realty Company, and having a width in the rear on said shore line of Lake Pontchartrain of 1433 feet, containing, 400 acres more or less.”
In the alternative, plaintiff prays for a judgment against defendants for $60,000, representing the value of deceased’s one-half interest.
The District Court found in favor of defendants, holding there was no proof of fraud or deception practiced by them and dismissed plaintiff’s suit. Plaintiff now prosecutes this appeal.
Reference to plaintiff herein relates to his dual representative capacity (administrator, and as attorney-in-fact of the widow and heirs); reference to Leiser, to the deceased Benjamin Leiser; reference to Lagasse or Smith, to defendants respectively.
On March 29, 1926, Leiser and Smith jointly acquired the above-described acreage, at a purchase price of $26,200, $10,-000 cash, and the balance represented by two vendor’s lien and mortgage notes, each for $8,100, signed by both. The notes were later acquired by two New Orleans banks, the Hibernia and the Whitney.
The Hibernia note was reduced in principal to $7,100, and the Whitney note to $4,100, interest on both paid to March 30, 1929, per endorsements thereon March 30, 1934 by Leiser.
In 1931 the banks instituted, but did not complete, • foreclosures, because the value of the property was less than the unpaid taxes. In lieu of the foreclosure sale, they purchased at tax sale for unpaid ad valorem taxes for 1930 in the Hibernia’s name, for their joint account, in the proportion of %iths for Hibernia and tilths for the Whitney.
The foreclosures were not prosecuted for the further reason that Smith was adjudicated and discharged a bankrupt in 1931, and Leiser was insolvent with no visible assets to satisfy the mortgages.
Included in Smith’s bankruptcy creditors was a note due Leiser in the sum of $4,682.43. Smith’s half interest in the acreage involved here was, upon petition of the trustee, abandoned to the mortgage creditor, since it had no value beyond the mortgage indebtedness, and was worthless to the bankrupt’s estate.
Leiser left New Orleans for Colorado late in 1938, and remained a resident of Colorado until his death in 1954.
Smith, having somewhat rehabilitated himself by 1950, negotiated with the judi *708 cial liquidator of the Hibernia for a quitclaim to the property. The liquidator obtained an order of court, approved by the Whitney, authorizing the quitclaiming of the property to Smith, or any other person, without warranty, for $1,600. Smith discussed the matter with his attorney, who advised him against acquiring the property because his acquisition would be suggestive of litigation, since Leiser, former co-owner and tax debtor, might claim the acquisition enured to his joint benefit. Smith’s attorney negotiated with Hibernia’s liquidator and the Whitney, and, as a result, the property was transferred to Lagasse, a brother-in-law and employee of Smith, in September, 1950, with all right, title and interest, except without warranty, but with full substitution and subrogation of the vendors’ .rights.
In addition to the real estate, there was included in the sale the respective banks’ interest in the original mortgage notes and foreclosure suits, which at this time appear fully perempted and prescribed.
On September 17, 1952, Lagasse brought suit to confirm the tax title, making Smith and Leiser defendants, under La. Const. Art. 10, § 11, LSA, and LSA-R.S. 47:2228. Since Leiser was alleged to be an absentee and his whereabouts unknown, the Court appointed a prominent attorney, now a District. Judge, to represent him or his heirs. In due course there was judgment of confirmation. The attorney who represented Lagasse in the purchase from the banks also represented him in the tax confirmation suit, and as co-counsel here.
Plaintiff seeks annulment of Lagasse’s confirmation suit on the ground Lagasse falsely stated he made diligent search, without avail, to locate Leiser, when he knew or should have known Leiser was a resident of Denver, Colo., and listed in the telephone directory there; or, alternatively, that he is entitled to be adjudged half owner of the property, or to obtain a money judgment against defendants for $60,000, the value of a half interest.
Plaintiff makes no charge that the tax title was or is defeasible and a nullity. That defendant Lagasse made no effort to locate Leiser is of no consequence with respect to the validity vel non of the confirmation suit, since Leiser admittedly was an absentee from Louisiana since 1938 until his death in 1954 in Denver, Colo., and LSA-R.S. 47:2228 specifically provides for the appointment of a curator-ad-hoc where the former owner is an absentee. A confirmation suit under the cited statute is a means to put the final quietus on a tax sale, not a sine qua non for the final validity of the title, since the statute specifically provides:
“ * * * that the failure to bring suit shall in no manner affect such prescriptive titles.” Hart Land & Improvement Co. v. Kelly’s Heirs, 145 La. 349, 82 So. 366.
Further, the plea of prescription or per-emption of five years is good. La.Const. Art. 10, § 11.
Regarding the alternative charge that Lagasse was interposed to conceal Smith’s acquisition in order to defraud Leiser, and that Smith colloborated by accepting service of citation, the record and evidence shows:
Lagasse was represented by John T. Charbonnet, the same attorney who represented him in the purchase of the property from the banks, and in this proceeding.
Lagasse admitted the brother-in-law relationship to Smith, and that he was an employee of Smith for eight years; that attorney Charbonnet handled the entire matter for him, even advancing the $1,600 purchase price, which he still owed at the time of trial, but insisted that he (La-gasse) acted solely and only for himself. The curator-ad-hoc testified he handled the *709 defense as a routine matter since he could find no valid defense to the annulment suit, and we assume he meant also no invalidity of the tax sale.
Lagasse each year after his acquisition from the banks paid the taxes, as evidenced by his cancelled checks.
At the time of the trial the property was appraised at $6,000 per acre, or $121,320 for the 20.22 acres involved.
Plaintiff bases his case on the equitable doctrine, not statutory, established by our jurisprudence, to the effect that, when one of the co-owners of an undivided interest in land purchases the property at a tax sale, or from a purchaser at a tax sale, the acquisition enures to the benefit of his co-owner at his option. Duson v. Roos, 123 La. 835, 49 So. 590; Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481. More recently, in Jones v. Jones, 240 La. 174, 121 So.2d 734, the Court held that this equitable doctrine has no application where a former co-owner purchases property at its market value, after the expiration of the redemption period, from a third person, adjudicatee at a tax sale, who is neither an interposed party, nor an agent of the owner, and there is no trust relationship or fraud or collusion.
The right of a co-owner to be reinvested with title on reimbursing other co-owner his share of taxes after other co-owner has re-purchased property at tax sale, being only an equitable right, must be exercised within a reasonable time. Ensminger v. Vampran, La.App., 15 So.2d 161; Keller v. Haas, 202 La. 486, 12 So.2d 238; Harrell v. Harrell, 174 La. 957, 142 So. 138; Cooper v. Edwards, 152 La. 23, 92 So. 721.
Where land was sold at tax sale in 1914 to an attorney, who previously had acquired a one-third interest in the land in co-ownership with his client, an action begun in 1936, when the land suddenly became valuable by the discovery of oil, by parties claiming under the client to annul the tax sale to the attorney, and to establish their two-thirds interest in the land, was held barred both by peremption prescribed in La.Const. Art. 10, § 11, and laches. Buchanan v. Pitts, 5 Cir., Ill F.2d 599.
 Plaintiff emphasizes the fact that the attorney who represented Lagasse in the acquisition from the banks in 1950, as well as attorney for Lagasse in the tax confirmation suit, and now as defense co-counsel in this suit, did not testify here. Because of such failure, plaintiff invokes the rule of implication that the attorney’s testimony would have been prejudicial to defendants. Plarris Finance Corporation v. Fonte, La.App., 102 So.2d 885; International Derrick & Equipment Co. v. Stovall, La.App., 38 So.2d 812. Defendants reply that plaintiff should have summoned the attorney or asked for a continuance to take his testimony. Plaintiff had a right to expect counsel of record, especially one personally involved, to appear and testify at the trial without being summoned.
Let us now review the evidence with reference to the equitable principal that a co-owner who redeems property from a tax sale, redeems or purchases it for account of his co-owners as well as himself.
There is not one scintilla of evidence, nor suggestion, that the banks were interposed or were guilty of fraud when acquiring at tax sale in 1931. Nor can there be any suggestion that Smith permitted the property to be sold for taxes in 1931 in order to reacquire it 20 years later from the banks to strip Leiser of his half interest. Both were hopelessly insolvent. Leiser, after the sale remained in New Orleans until 1938, but never made any inquiry about the tax sale of the property, of which he must have had notice. He left New Orleans in 1938 without any attempt to liquidate the banks’ mortgages, *710 never to .return, passing away in 1954 in Colorado.
Plaintiff contends that once Smith obtained the consent of the banks to quitclaim their respective interests, he was morally and legally bound to do so because there was a fiduciary relationship existing with Leiser, notwithstanding Smith’s discharge of his indebtedness to Leiser in bankruptcy.
While a moral obligation to pay Leiser might have remained, it did not establish a trust or fiduciary relationship between them, since Smith owed Leiser no more legal or moral duty to protect Leiser than Leiser owed Smith to redeem or acquire the property from the banks.
While the District Judge held there was no fraud or collusion between La-gasse and Smith in the acquisition from the banks, there is sufficient suspicion and uncertainty about the transaction to warrant further explanation, to wit:
1. Why did the attorney for Smith and Lagasse not testify and explain the transaction, since he handled the entire matter and his client was under serious charges with substantial loss involved?
2. Why were the banks satisfied in 1950 to accept $1,600 to transfer title to Lagasse, with an apparent indefeasible tax title costing them $1,600 plus their mortgages of $11,000, 7% interest per annum thereon from March, 1929, attorney’s fees and court costs ?
3. What was the fair market value in 1950 as compared to the market value of $121,320 in 1958?
In view of the serious allegations and absence of essential data mentioned above, and our inability to understand why Smith would surrender a “whole loaf” because of the possibility of having to give a “half loaf” to a former co-owner, we believe in 'the interest of fairness and equity this case should be’ remanded to the District Court for further testimony in connection with the above queries, especially in view of the holding in Jones v. Jones, cited supra.
For the reasons assigned, the judgment of the District Court is set aside, a new trial granted, consistent with the views herein expressed, and the case remanded to the District Court for such purpose; costs in both courts to await the final outcome.
Judgment set aside; new trial granted.