**24 So.2d 610**

**KELLER et al. v. HAAS et al.**

**No. 37725.**

Dec. 10, 1945.

Rehearing Denied Jan. 7, 1946.

Anthony J. Roy, of Marksville, and Jackson & Mayer and Tucker, Bronson & Martin, all of Shreveport, for appellants.

LeDoux R. Provosty, of Alexandria, for interveners-appellees.

Couvillion & Couvillion and LaBorde & Edwards, all of Marksville, for defendants-appellees.

KENNON, Justice.

This is a suit, filed in 1939, by the plaintiffs, Annie Laura Keller (Laura Bell) and Charles L. Mayer, against W. D. Haas and the Haas Investment Company, Inc., wherein the plaintiffs seek to be recognized as the owners, in equal proportions, of an undivided three-fourths interest in a thirty-five acre tract of land in Avoyelles Parish, and to recover a like proportion of the rents and revenues received from the property since July 9, 1915, less their share of the taxes paid.

Since the filing of this suit, W. D. Haas, sometimes referred to herein as Dr. Haas, and his wife, Mrs. Hattie Haas, have both died, and their heirs have become parties defendant; a portion of the interest of intervener, Sid W. Richardson, has been transferred to Sid W. Richardson, Inc., and this corporation has become an intervener.

The plaintiffs allege that the property in controversy was purchased in 1881 by Octavia, Polly (Molly), Alva (George Alva), number of properties to the Haas Invest-

and the plaintiff, Annie (Anna Laura) Keller; that Polly died about 1890, leaving as her own heirs her mother, Emely Hampton Keller, and her brothers and sisters, Octavia, George Alva, Anna Laura, and Viola Keller, her said brothers and sisters constituting all of the children of their mother; that on July 11, 1895, Octavia Keller conveyed to Dr. Haas an undivided one-fourth interest in the property; that Emely Hampton Keller died about 1904; that Viola Keller Evans died about 1914; that Octavia Keller died about 1916; and that Gladys Evans, the only child of Viola Keller Evans died about 1917, survived by her father, Eddie Evans.

That in 1900, the plaintiff, Laura Keller, conveyed to her brother, George Alva Keller, an undivided one-third interest in and to this land; and that she purchased back from him on July 11, 1939, all of his interest in this property, and, on the same day, conveyed to Charles L. Mayer, the other plaintiff herein, an undivided one-half of her interest therein.

That Dr. Haas, then owner of an undivided one-fourth interest, purchased the interest of his co-owners in the property at tax sale; that at the time and prior thereto, Dr. Haas had been and was in possession of said property as co-owner and enjoyed the fruits and revenues therefrom.

That at the time of filing suit against W. D. Haas and Haas Investment Company, Inc., the Investment Company was the holder of record title, having acquired same from Dr. Haas on April 18, 1927, when the said Dr. Haas conveyed a considerable number of properties to the Haas Invest-

ment Company, Inc., in consideration of 4,460 shares of its capital stock out of 5,-000 authorized; the remaining 540 shares were issued to the wife and children of Dr. Haas, who was the principal incorporator, President and General Manager, and with full control of the corporation after its organization.

Exceptions of no right or cause of action were filed by both defendants.

Each defendant also filed a plea of estoppel, asserting that the plaintiffs, by their action in failing to either redeem the property or to take any action with reference to the 1915 tax title for more than twenty years, etc., are now estopped from prosecuting this suit.

Sid W. Richardson, George H. McIntyre, George H. Campbell and J. A. Hoover, intervened in this suit, claiming a lease for the mineral development of the property, and prayed for recognition thereof.

The Haas Investment Company, Inc., filed a plea of prescription of ten years based upon the tax titles of July 9, 1915 and August 5, 1922.

In December, 1940, the exceptions of no cause or right of action of the Haas Investment Company, Inc., were sustained by the district court.

The plaintiffs appealed. This Court held that the petition did state a cause of action and remanded the case for further proceedings. 202 La. 486, 12 So.2d 238.

The defendants then answered, denying the ownership of the plaintiffs and admitting that Dr. Haas acquired the interest

claimed by the plaintiffs by tax deed on July 9, 1915, and asserted that the tax sale was real and his acquisition bona fide. The defendants admitted the incorporation of the Haas Investment Company, Inc., and the issuance of stock to Dr. Haas, as alleged, and as to control of the corporation, submitted "* * * that the charter of said corporation is the best evidence of who was the President and General Manager of same and as to where the full and complete control of the corporation was vested after organization * * *." They denied that any accounting was due the plaintiffs but, in the alternative, alleged that any rents due to the plaintiffs would be barred by the prescription of three, five, and ten years, which prescription was specially pleaded.

The answer set up as an additional defense that the title had passed to and through third parties through its sale by Dr. Haas to John Gremillion in 1918 and by Gremillion to Clifton Wilson two years later; that Gremillion went into possession and farmed the place in 1918; that Wilson lived on it for the following two crop years and endeavored to improve the place generally, as well as to produce crops; that Gremillion and Wilson were third parties in possession under deeds in regular course and without notice; that on August 5, 1922, a tax sale was executed to Dr. Haas by the Sheriff of Avoyelles Parish for the unpaid taxes of 1921 due and assessed in the name of Clifton Wilson; that Dr. Haas again took possession of the whole of the property and remained in peaceful possession thereof until April 18, 1927, when he conveyed same, along with 124 other items of

property (valued at $500,000) to the defendant corporation; and that the corporation has had possession of said property since that date, leasing same to the interveners, as alleged.

Re-urging its plea of estoppel, it prayed that the plaintiffs' suit be dismissed.

In November, 1943, after the death of their parents and their substitution as party defendants, the heirs of Dr. Haas and his wife joined the Haas Investment Company, Inc., in filing an answer substantially the same as that originally filed by the defendant corporation, setting forth in detail the possession of defendants, their tenants, and that of Gremillion and Wilson, and again pleading prescription of ten years acquirendi causa, and the constitutional prescription relative to the setting aside of tax sales; detailing the interest which Dr. Haas had in corporations other than the Haas Investment Company, Inc.

The district court rendered judgment in favor of the defendants, rejecting the plaintiffs' demands, at their costs, and recognizing the title of the Haas Investment Company, Inc., subject to the mineral lease of the interveners.

The facts as found by the district court were that Dr. Haas, on July 11, 1895, purchased an undivided one-fourth interest in the property in controversy; that he acquired the remainder of the property at tax sale on July 8, 1915, under assessment to George and M. Keller; that at the time of this sale, the only co-owners with Dr. Haas were George Alva Keller, Octavia Keller, and Gladys Evans (daughter of Viola Keller, deceased), and that the plaintiff Anna Laura Keller, owned no interest in the tract at that time, nor did the plaintiff, Charles L. Mayer, whose initial interest was acquired in 1939; that on July 11, 1939, George Alva Keller conveyed all of his interest in the tract to Anna Laura Keller and on the same day, she conveyed to Charles L. Mayer, coplaintiff herein, an undivided one-half of her interest; that Dr. Haas sold the land to John Gremillion early in 1918; that Gremillion, after possessing the land and farming it during the crop year 1918, sold it to Clifton Wilson before the end of the year, and that Clifton Wilson lived on and farmed the property for two years before abandoning same; that a second tax sale under assessment to Clifton Wilson took place on August 8, 1922, to Dr. Haas; that in 1927, Dr. Haas transferred the property, together with many other items, to the Haas Investment Company, Inc.; and that the land is currently of great value due to the discovery of the Eola Oil Field.

The district court, in denying recovery to the plaintiffs on equitable grounds said, in part:

"* * * The court is rather of the opinion that this equitable doctrine is available only to the original co-owners or their heirs, and must be exercised within a reasonable time. Their transferees do not occupy, quoad the doctrine, the same position that the original co-owners did. As previously stated, these plaintiffs have stood idly by for years, silent and enactive, while W. D. Haas sold the property to John Gremillion, while John Gremillion sold the

property to Clifton Wilson, while W. D. Haas reacquired it at a second tax sale and finally transferred it to the Haas Investment Company, and while it developed into an oil field. In this suit, none of these sales are attacked as fraudulent; in fact the only one mentioned is the sale by W. D. Haas to the Haas Investment Co., Inc. The other intervening three are omitted altogether in their pleadings. These parties, during this entire period of 24 years, have allowed this property to pass through and into the hands of not one but several innocent 3rd parties. The good faith of these intervening purchasers is presumed, it is not even attacked. The Court is not impressed with plaintiffs' contention, raised for the first time in brief, that Gremillion and Wilson were not 3rd parties and that they acquired only what rights W. D. Haas had. Both of these parties purchased the entire tract on deeds regular in form and translative of property. The descriptions contained in both of these deeds are fully descriptive of the property. The consideration stipulated in these sales is adequate, the deeds are properly executed, witnessed and duly authenticated. The evidence supporting this fact is not contradicted by plaintiffs. In support of their pleas of prescription, the defendants have introduced the deeds above referred to, showing that the property has passed into the hands of various 3rd parties. The stipulation entered into by counsel for plaintiffs and defendants show that from 1922 to 1942, the property was being rented as farmland and that the testimony of Clifton Wilson, which is uncontradicted, shows that from the time the tract was acquired by Gremillion un-

til it was lost at tax sale by Wilson to Dr. Haas, the property was farmed and possessed to its fullest extent during their respective ownerships. Their respective titles were never questioned and plaintiffs have avoided all reference to these deeds; their good faith is necessarily presumed. The only mention of same by plaintiffs was by objection to their introduction on the ground that they were simulations. This objection, the court treats lightly and finds it unfounded as it is well established that a defendant in such an action may plead any defense that he may have. Those deeds could not be thus collaterally attacked. Moreover, the objection of fraud and simulation cannot be heard for the first time in briefs. There is no allegation in plaintiffs' petition that these deeds were fraudulent or simulated; nor is there any proof to support this contention. Fraud must be both alleged and proved; they have done neither. It was altogether proper that defendants should show by competent evidence that this property had passed through the hands of various 3rd parties before its acquisition by the Haas Investment Co., Inc., in 1927. The evidence shows that these three intervening deeds are genuine, i.e., Haas to Gremillion, Gremillion to Wilson, and Wilson to Haas by tax sale. Each was a purchaser of the whole of the property. In one W. D. Haas was not even a party, in another, the tax sale from Wilson to himself, it was a deed by the duly constituted taxing authority of the Parish of Avoyelles, based on a valid assessment against the record owner. The mere objection that these are simulations, unsupported by any proof to that effect,

does not in the court's mind make the objection well founded."

The district court further found that the Haas Investment Company, Inc. was duly organized as a corporation in 1927 and has functioned since that date as a separate entity from W. D. Haas.

The lower court further declared that the title acquired by W. D. Haas at the August 8, 1922, tax sale was protected by the prescription of three years relative to tax deeds, under the Constitution, citing Cooper v. Edwards, 152 La. 23, 92 So. 721, and Harrell et al. v. Harrell, 174 La. 957, 142 So. 138.

The district judge also sustained the plea of prescription acquirendi causa under Article 3478 of the Revised Civil Code.

The plaintiffs have appealed.

The facts of this case are relatively clear:

An examination of the land transfers and death of owners set forth in the plaintiffs' petition and substantiated at the trial shows that on July 8, 1915, when the first tax sale was made, W. D. Haas owned a one-fourth interest in the property and George Alva Keller owned all of the remainder thereof, excepting a small interest inherited by Gladys Evans, daughter of Viola Keller Evans, upon her mother's death in 1914; that the entire interest of George Alva Keller was purchased by his sister in 1939, after the discovery of the Eola Oil Field and that one-half of her interest in the property was transferred on the same date to Charles L. Mayer, co-plaintiff herein; that W. D. Haas had

complete possession of the property for some years prior to 1915 and up to the purchase by John Gremillion on January 26, 1918; that Gremillion farmed the property in 1918 and possessed it until its sale to Clifton Wilson on November 29, 1918; that Clifton Wilson lived on and farmed the land for two years, whereupon W. D. Haas resumed possession, taking title again by tax sale (under assessment in the name of Wilson) on August 8, 1922; that W. D. Haas transferred the tract, together with a large amount of other property to the Haas Investment Company, Inc., on April 18, 1927, receiving in return over four-fifths of the stock of that corporation, of which he became President and Manager, with full and complete authority to handle its affairs and alienate its property, even without the consent of the Board of Directors; that the corporation possessed the property after that date and is now in possession thereof, and is charged with full knowledge of the equities of this case; that a lease was granted by that corporation to the intervener; that the Eola Oil Field was discovered in 1939 and there are producing wells on this land; and that the value of the property in controversy is set by stipulation at $509,500.

The plaintiffs rely upon the doctrine and holding in Murphy et al. v. Murphy, 136 La. 17, 66 So. 382, in which a co-heir, who bought the interest of his absent co-owners at a tax sale in 1889, kept the property without contest until 1914, when heirs of his co-owners sued for recognition of their father's interest. The Supreme Court held that the defendant's purchase of his co-

heirs' interest at the tax sale operated merely as a payment of taxes; and that his residing on the land and using its resources was worth more than the taxes assessed against it. The plea of prescription was overruled and judgment for the plaintiffs, as prayed for, was affirmed.

■ In the instant case, if title and possession had remained in W. D. Haas and if his 1915 co-owners had retained their title and brought suit, the doctrine of the Murphy case, supra, would be applicable, as there is no question about the proposition of law that as between the original co-owners, a sale to one of them for delinquent taxes amounts to payment of taxes and enures to the benefit of all the co-owners. This is an equitable doctrine and not founded on statutory or codal provisions.

The plaintiffs' case rests upon that equitable doctrine, as announced many years ago in decisions of this Court, that as between the parties, a purchase by one owner of joint property for delinquent taxes amounts to a payment of the taxes and inures to the benefit of all the co-owners.

In deciding cases of equity there can be, of necessity, no detailed and standardized rules.

The authorization for Louisiana courts to decide cases "according to equity" is Article 21 of the Revised Civil Code:

"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."

■ Were this the first case of its kind, the Court would decide it principally on "natural law and reason". However, the decisions of this Court in previous cases of a similar nature constitute "received usages". There is a second reason for following the decided cases. These cases have become a part of the law, and according to well-established rules "Equity follows the law". "Judicial continuity" is important even in the interpretation of specific written provisions of the Constitution and Code, as many of these are not certain until ultimately defined by judicial decision. In the decision of cases involving an equitable question, like the present one, the absence of the "express law" means that orderly development of the law depends entirely upon this Court's acceptance of and adherence to its past decisions, rather than following the personal views of the individual judge who prepares the opinion in each successive case.

■ In Cooper v. Edwards, 152 La. 23, 92 So. 721, 722, Benjamin F. Cooper, one of the nine heirs of Henry Cooper, purchased in 1903 at tax sale the interest of his brothers and sisters in a tract of land inherited from their father. Two years later, he sold the whole tract to defendant Edwards. It was stated in the deed that "* * * the land conveyed was a part of the land that Benjamin F. Cooper had bought for delinquent taxes assessed in the name of the estate of Henry Cooper." Eleven years thereafter, one of the heirs bought "all the rights, title and interest" of seven of the eight other heirs for a stated price of $300. (The evidence discloses,

that he actually gave his promissory note for the $300 on a written agreement that he would sue to recover the land, at his own expense, and would not be required to pay the note if he failed in his suit for the land.) Edwards pleaded in defense, (1) That the co-heirs who transferred to the plaintiff their claims had forfeited their equitable right to redeem the property by failing to act within a reasonable time; (2) That the attack upon the tax sale from Cooper was barred by prescription of three years; (3) That the suit was barred by the prescription of ten years, under Article 3478 of the Civil Code; and (4) That title was acquired on the faith of the public records and was not affected by the latent nor unrecorded claim of the co-heirs from whom the plaintiff claimed title. Justice O'Niell (now Chief Justice) was the organ of the Court, and in that decision, reiterated the principle that " * * * When property is sold to one of its joint owners for delinquent taxes, the transaction may be regarded, as far as the co-owners are concerned, as a payment of the taxes, not as a transfer of an indefeasible title." The Court maintained the title of Edwards, in spite of the above mentioned language in the deed itself. In passing upon the case and sustaining the plea of prescription of three years, the Court said:

"* * * In the case before us, the defendant, Edwards, did know of the relationship of the plaintiff's authors in title, to the deceased Henry Cooper, and to Benjamin F. Cooper, when defendant bought the land from him. Defendant was remotely related to the heirs of Henry Cooper

and was personally acquainted with them. Whether his knowledge in that respect might affect the title he acquired from Benjamin F. Cooper, if it were not protected by the prescription of three years, is only an abstract question; because the title is protected by the prescription of three years. It is evidenced by a tax sale that has been duly recorded for a period exceeding three years, during which time the tax debtors, for whose taxes the property was sold, have not had possession of it. Under these conditions, according to the language of the Constitution, the tax sale was not subject to an action of annulment after three years, except for a dual assessment or for previous payment of the taxes for which the property was sold. There was no such ground of complaint in this case. The only complaint is that the purchaser of the property at the tax sale was already a part owner of it, and was therefore, like plaintiff's authors in title, a delinquent debtor for the taxes for which the property was sold. It was decided in each of the two cases last referred to, Harris v. Natalbany Lumber Co. (119 La. 978, 44 So. 806) and Vestal v. Producers' Oil Co. (135 La. 984, 66 So. 334) that an action to annul a tax sale, for the cause urged here, after the purchaser at the tax sale had transferred the property to a third party, was barred by the prescription of three years. It is true, in each of those cases, the court characterized the defendant as an innocent purchaser of the property, or a purchaser in good faith; but the question of good or bad faith—founded upon ignorance or knowledge of facts not disclosed by the public records—has nothing to do with the

plea of prescription of three years, under article 233 of the Constitution of 1898 or of 1913, or section 11 of article 10 of the Constitution of 1921.

"The judgment is affirmed at appellant's cost." (Parenthesis ours.)

The plaintiffs in the instant case, like the plaintiff in the Cooper v. Edwards case, acquired their principal interest after the land became valuable, and this suit to them is somewhat in the nature of a speculation rather than one by a co-heir to have returned to him a former interest lost through unfaithfulness of his co-owners.

The defendant, Haas Investment Company, Inc., is charged with full knowledge of the equitable rights of the original co-owners, as was the defendant, Cooper, whose deed contained the above quoted language that the vendor was selling land acquired at tax sale from the estate of the common ancestor of the vendor and his former co-owners.

In Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366, 369, the company, which had already had ownership of the principal interest in the property, acquired the undivided interest of one Maggie Cole at tax sale on October 17, 1899. This Court sustained the co-owner's tax title, even though the property had not passed into the hands of third persons, on the ground that long acquiescence ratified the tax purchase by the co-owner. The Court, in that case, stating:

"The supplementary contention of plaintiffs that the possession of the tax purchaser was the possession of all the co-owners, suspending prescription, and that its purchase inured to the benefit of all the co-owners, was correctly disposed of by the district judge as follows, viz.:

" 'As to the interruption of prescription by possession for all, it will cease, of course, when the possession by the tax purchaser for himself is held to have begun under the tax deed; and that begins when, if ever, the co-owner loses the right to redeem his title.

" 'There is no statutory law prohibiting the purchase of an undivided interest in land by a co-owner at tax sale; but if he does purchase, equity holds that the tax deed inures to the benefit of his co-owners, at their option. They may or may not exercise their option by paying their portion of the tax and demanding a reconveyance; and if they fail to do so within a reasonable time, the tax purchaser may rely upon their acquiescence and hold the title as his individual property.

" 'The authorities are uniform that the equitable principle which protects common tenants from loss by tax adjudications to either of them also protects the adjudicatee from belated claims for reconveyance by his co-owners. They cannot indefinitely neglect their duties to the property and to their co-owner and still claim rights which rest upon those duties. "(They) cannot sleep upon this right, await developments, to see whether the property will grow in value or not, and then exercise the rights or not, according to the event." Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am.St. Rep. 375; Joffrion v. Gumbel, 123 La. 391,

48 So. 1007; Cooper v. Edwards, 152 La. 23, 92 So. 721; Vestal v. Producers' Oil Co., 135 La. 984, 66 So. 334.

" 'The tax sale in this case comes within the principles thus laid down. The defendant company has been in possession actually of a large portion of the property and constructively of all of it, for more than 20 years. Large manufacturing enterprises, with the incidental structures of mills, offices, residences, commissaries, tramways, roads and fences have grown up, lived their lives, and many of them decayed or been removed. And during all these years the plaintiffs asserted no claim, demanded no rights, assumed no duties. It was only when speculative values by reason of explorations for oil affected the property that their inaction ceased. Their long acquiescence has ratified the tax purchase by their co-owner, and they have lost the right to assert that he purchased for the account of all.' "

In Ramsey v. Frost-Johnson Lumber Co., 168 La. 657, 123 So. 114, Chief Justice O'Niell again cited with approval the Cooper v. Edwards case and quoted again the decision above set out from the Doiron v. Lock, Moore & Co. case.

In Harrell et al. v. Harrell, 174 La. 957, 142 So. 138, this Court sustained a tax purchase by a co-owner because of the long acquiescence of the plaintiffs. In that case, a co-owner, S. Price Harrell, had purchased an interest of his co-owners at tax sale, and later gave a mortgage on the property, which was foreclosed after his death. His surviving spouse repurchased the same property from the foreclosing creditor less than three months later. His widow was one of the defendants. She was also administratrix of his estate and, apparently, had full knowledge of the equities and the only "third party" title involved was that of the mortgage creditor during the few months between the time he took over the property and re-deeded it to the mortgagor's widow and administratrix. The judgment of the lower court in favor of the defendants was affirmed by this Court, which quoted from and cited with approval the Cooper v. Edwards and the Doiron v. Lock, Moore & Co. cases. In sustaining the plea of estoppel, the Supreme Court used the following language [174 La. 957, 142 So. 141]:

"Our conclusion is that it is too late for the plaintiffs to invoke the equitable doctrine of co-ownership, because of the great length of time which has elapsed since the tax sales, and the change which has taken place in the value of the property in dispute, and also for the reason that the property has passed into the hands of third parties, not co-owners."

Since there is no constitutional, statutory, or codal law governing the rights of the parties in cases of this sort, we must be guided by the principle of equity and its application by this Court to prior cases of a like nature. We believe the jurisprudence is with the defendants and that this case is properly governed by the holding of this Court in Cooper v. Edwards; Doiron v. Lock, Moore & Co.; and Harrell et al. v. Harrell, supra.

For the reasons assigned, the judgment of the district court is affirmed; appellants to pay all costs.

HAMITER, J., dissents.

HAMITER, Justice (dissenting).

In my opinion the doctrine of Murphy et al. v. Murphy, 136 La. 17, 66 So. 382, is applicable to the instant case, and its holding is decisive of the issues presented here; hence, I respectfully dissent.