LOTTINGER, Judge.
The petitioners, certain forced heirs of Harvey D. Bates and his deceased wife, Mrs. Rosa Strickland Bates, brought this suit against Mrs. Veda Williams Trevino and Mrs. Lela Bates Avriett, who are also heirs of Harvey D. Bates and Mrs. Rosa Strickland Bates. The petitioners seek to be recognized and decreed to be owners in indivisión of certain property in question. The lower court rendered judgment in favor of petitioners as prayed for, and the defendants have taken this appeal.
Harvey D. Bates, the original owner of the property, acquired same during the year 1871, prior to his marriage. After his death, his widow, Rosa Strickland, had herself recognized as owner of the undivided one-half interest with the seven children of the marriage as owners of the remaining half. After the death of Mrs. Bates on January 25, 1926, one of her daughters, Mrs. Elizabeth Bates Bridges, mother of most of the plaintiffs herein, was permitted to remain on the property and in consideration she was to pay the taxes. It later developed that she could *529 not pay the taxes and the said taxes were then paid by three of the seven children, Milton S. Bates, now deceased, Mrs. Lela Bate Avriett, one of the defendants and Mrs. Eula Bates Williams. In 1930, the tax burden being heavy and the other heirs refusing to assist in the payment of taxes, according to defendants’ claim, these three children let the property go to tax sale so as to adjust the matter. The property was purchased by Robert T. Carter, an attorney. There is no question that Mr. Carter purchased the property at tax sale for the benefit of the family. After this tax sale to Mr. Carter, all of the heirs of the property were notified that they could redeem their interest in the property from Mr. Carter by paying their share of the taxes. Some of the heirs answered, saying that they were unable to pay, some others answered that they were not interested and the remaining ones gave no answer. It is clear from the record, nevertheless, that none of the plaintiffs herein paid any of the taxes on this property for a few years prior to the tax sale and subsequent to the tax sale. After the expiration of the redemptive period, Mr. Carter made a quitclaim deed to Mrs. Avriett, Mrs. Williams and Mrs. Williams’ daughter, Mr. Bates having died during the intervening period. The consideration for the quitclaim deed was the sum of $1. Mrs. Williams had subsequently died, so her daughter, Mrs. Trevino, now owns two-thirds and Mrs. Avriett now owns one-third interest in the property. After the quitclaim deed from Mr. Carter to the defendants herein, they permitted Mrs. Elizabeth Bates Bridges to remain on the property. There is no question that Mrs. Bridges was well acquainted with the transaction as she referred prospective timber buyers to the defendants, furthermore, in 1936, she also asked permission from the defendants to cut some of the wood off of defendants’ property to help pay an attorney’s fee for her son who was in trouble. It appears further from this record that several years after these defendants acquired the property from Mr. Carter, that they sold timber off of the property and also sold mineral leases. It is also to be noted that none of the plaintiffs herein made any claim whatsoever for this property from the date of the tax sale, which was 1931, up until the date that the petition was filed in this case which was in. August, 1950.
Petitioners claim that in purchasing the property at tax sale, Mr. Carter was acting as attorney for Mr. Bates and that the reason for letting the property go for taxes was to get the property into the name of Bates, Mrs. Avriett and Mrs. Williams. They claim and cite jurisprudence to the effect that in fact there has been no sale, .that the transaction in question ' only amounted to a payment of taxes and that the property is still owned by the heirs of Harvey D. Bates and pray that the parties to the suit be recognized and decreed to be owners in indivisión of the property in question in the proportions set forth in the petition.
Defendants agree to the propositions of law cited by petitioners, but claim that it was incumbent upon petitioners to prosecute their claim within a reasonable time of the tax sale. They claim that petitioners have now lost their rights because of laches. They further claim that each of petitioners was offered the right of redeeming the property in their proportionate shares from Mr. Carter, but that they had refused to do so and that they should now be estopped from asserting their claim.
The lower court gave judgment in favor of petitioners, recognizing them as owners of the property in indivisión with defendants in the proportions claimed by petitioners.
It is now the well-settled law of our state that the adjudication to one of several joint owners of property adjudicated at a tax sale does not divest the other co-owners of their interest in the property. The judication only operates as a payment of the taxes for the joint benefit of the co-owners, with the right on the part of the adjudicatee to be reimbursed the amount he paid. Ensminger v. Vampran, La.App., 15 So.2d 161; Bossier v. Herwig, 122 La. 539, 36 So. 557. However, it has been held that *530 the right of the co-owners to become reinvested with his title upon reimbursing the other co-owner of his share of the taxes is a right which must be exercised within a reasonable time and if the right is not exercised within a reasonable time and third parties acquire an interest in the property on the strength of the recorded tax title without any knowledge of the equitable interest of the co-owners to become reinvested with his title or reimbursing his co-owners for the taxes paid by him, such third person will be protected and can plead the prescription provided for in Article 10, Section 11, of the Constitution against an attack on the tax sale. Cooper v. Edwards, 152 La. 23, 92 So. 721; Ramsey v. Frost-Johnson Lumber Company, 168 La. 657, 123 So. 114.
Furthermore, on the question of reasonable time, we quote the following from Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366, 369:
“There is no statutory law prohibiting the purchase of an undivided interest in land by a co-owner at tax sale; but if he does purchase, equity holds that the tax deed inures to the benefit of his co-owners, at their option. They may or may not exercise their option by paying their portion of the tax and demanding a reconveyance; and if they fail to do so within a reasonable time, the tax purchaser may rely upon their acquiescence and hold the title as his individual property.
“The authorities are uniform that the equitable principle which protects common tenants from loss by tax adjudications to either of them also protects the adjudicatee from belated claims for re-conveyance by his co-owners. They cannot indefinitely neglect their duties to the property and to their co-owner and still claim rights which rest upon those duties. ‘(They) cannot sleep upon this right, await developments, to see whether the property will grow in value or not, and then exercise the rights or not, according to the event.’ Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375; Joffrion v. Gumbel, 123 La. 391, 48 So. 1007; Cooper v. Edwards, 152 La. 23, 92 So. 721; Yestal [Vestal] v. Producers’ Oil Co., 135 La. 984, 66 So. 334.
“The tax sale in this case comes within the principles thus laid down. The defendant company has been in possession actually of a large portion of the property and constructively of all of it, for more than 20 years. Large manufacturing enterprises, with the incidental structures of mills, offices, residences, commissaries, tramways, roads and fences have grown up, lived their lives, and many of them decayed or been removed. And during all these years the plaintiffs asserted no claim, demanded no rights, assumed no duties. It was only when speculative values by reason of explorations for oil affected the property that their inaction ceased. Their long acquiescence has ratified the tax purchase by their co-owner, and they have lost the right to assert that he purchased for the account of all.”
See also Keller v. Haas, 209 La. 343, 24 So. 2d 610, 616, and Holloway v. Holloway, 221 La. 875, 60 So.2d 468.
 As was said in the case of Keller v. Haas, supra, “Since there is no constitutional, statutory, or codal law governing the rights of the parties in cases of this sort, we must be guided by the principle of equity and its application by this 'Court to prior cases of a like nature.” Article 21 of the LSA-Civil Code states: “In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.”
Therefore, according to this article of the Revised Civil Code, these plaintiffs are coming into court seeking equity. That being the case, they should be required to do equity and come into court with clean hands. We do not believe according to the facts as found in this record that these plaintiffs are coming into court with clean hands. They were given full opportunity *531 to help pay the taxes on the property before the tax sale. Mrs. Bridges, who had been left on the property, could not pay the taxes herself. She was in no financial position to do so. All of the other plaintiffs in this case refused or failed to pay the taxes. Accordingly, that left the burden on three of the children, Milton S. Bates, Mrs. Lela Bates Avriett and Mrs. Eula Bates Williams. These three paid the taxes for several years until it became too burdensome for them to carry on. According to the record, they made an arrangement with an attorney, Mr. Robert T. Carter, to purchase the property at tax sale so that they might clear up the property in one way or another. After the tax sale to Mr. Carter, according to this record, all of the plaintiffs were notified of this tax sale and were further notified that they could redeem their interest in the property from Mr. Carter by paying their share of the taxes. In response to this notice, some of the heirs answered, saying that they were unable to pay, others answered that they were not interested in the property and the remaining ones gave no answer. After the expiration of the redemptive period, Mr. Carter transferred the property to Mrs. Avriett, Mrs. Williams and Mrs. Trevino, daughter of Mrs. Williams. It can not be said that these plaintiffs were not given a full opportunity to put up their just share of the taxes and redeem the property. After these defendants received the quitclaim deed from Mr. Carter, they continued to pay the taxes on the property, they permitted Mrs. Bridges to remain on the property. Mrs. Bridges sent prospective timber purchasers to the defendants, she also asked the defendants herein for permission to cut wood off of defendants’ property to help pay an attorney’s fee for her son who was in trouble. Some years later, the dates not being certain, defendants sold timber off of the property as well as sold mineral leases on the property. In no place in this record does it appear that the plaintiffs sought to show collusion by or among the parties to the tax sale and quitclaim deed. All to the contrary, it appears that these defendants gave the plaintiffs every opportunity to pay their share of the taxes and redeem the property. As was stated in the cases here-inabove cited, the long inactivity and acquiescence of plaintiffs must be considered as amounting to a ratification of defendants’ acquisition and as a result they have lost a right to assert that the purchase of the property was for the account of all coheirs. We do not think that it would be fair and equitable for these plaintiffs to have sat idly by for more than twenty years, knowing full well that the property had been sold at tax sale and that they were given every opportunity and chance to redeem the property and to await for the growth and development of the community to take place, wherein these defendants might now get a good oil prospect, for these plaintiffs now to come in and assert their rights against the property. Therefore under the circumstances, we are of the opinion that these plaintiffs should now be estopped from asserting any claim or interest in the property.
For the reasons hereinabove assigned, the judgment of the lower court is hereby reversed, and plaintiffs’ suit dismissed at their cost.
Judgment reversed.
PER CURIAM.
Counsel in his motion for rehearing apparently takes the position that unless and until an innocent third party has acquired the property a co-owner may reacquire his interest. In the present case it is true that no innocent third party has acquired an interest in the property, however, under the facts as stated in our opinion the co-owners have not acted within a reasonable time as provided by law.
Counsel also mentions the fact that it was stipulated between them that the value of the 266.19 acres involved in the suit was less than $2,000, which, he says, “means that all parties realize it is not even worth as much as $10.00 an acre! ” Such a stipulation does not fix the value of the property and, of course, this was done in order to get the case in the Court of Appeal where it would be quickly decided. *532 One can almost take judicial cognizance of the fact that there is no more $10 an acre land.
Counsel in his brief states:
“In her brief, Counsel for defendants implies that there is a good oil prospect and mention of this is made in the decision; however, there is no proof whatsoever in the'record to this effect. If matters outside the record can be noted, it should further be noted that this suit was filed nearly three years ago; that there is not now, nor has there ever been a producing oil or gas well in St. Helena Parish; and that actually oil leases are even being dropped in this particular community. Surely if there was an oil prospect, the land would be worth more than ten dollars per acre.”
One of the plaintiffs, who was a main witness, testified: “ * * * There is an oil lease on that land.”
Counsel places great stress on the case of Ensminger v. Vampran, 15 So.2d 161, 163, decided by this Court. In that case it was stated:
“While the purchase of property at tax sale by a co-owner inures to the benefit of the other co-owner, giving the latter a right to be re-invested with title on reimbursing the other co-owner his share of the taxes, this right is an equitable one and must be exercised within a reasonable time. If the right is not exercised in a reasonable time and third parties acquire an interest in the property on the strength of the recorded tax title, without any knowledge of the equitable interest of the co-owner to become re-invested with his title on re-imbursing his co-owner for the taxes paid by him, such third person will be protected and can plead the prescription provided for in Article 10, Section 11, of the Constitution against an attack on the tax sale. Cooper v. Edwards, 152 La. 23, 92 So. 721; Ramsey v. Frost-Johnson Lumber Company, 168 La. 657, 123 So. 114.
“In the present case, no third persons acquired in good faith any interest in the land on the strength of the recorded tax deeds. As already stated, the purchase of the property by Picou at tax sale, and the subsequent transfer by him of the property to Mrs. Smiley had the same effect as though Andrew Smiley himself had been the adjudicatee, and the other heirs have the right to be re-invested with their interest in the property on reimbursing the heirs of Andrew Smiley the taxes paid by him, if it is shown in a proper accounting that they are due these heirs any amount.
“It is not shown that plaintiffs have been guilty of laches in bringing their action for the reason that no rights of third persons have been- affected by reason of the delay. Moreover, the plaintiffs were led to believe up to a short time before they filed this suit that Andrew Smiley had bought in the property at tax sale to clear up the title and that he was holding the property to be divided among the heirs.” (Emphasis added.)
From the above it is clear that this Court, without using the word “fraud”, found that it existed. There was no fraud in the present case as the record will show that all of the heirs were fully apprised of the facts in this case and sat idly by for approximately twenty years and how wish to be reinvested with title to this property. We are also of the opinion that the oil lease had a great deal to do with the filing of this suit.
Counsel also takes the position that there has never been a Louisiana case which held that for plaintiff to be guilty of laches or estopped to assert his rights in a case such as this unless the rights of innocent third parties has been affected, and he cites Keller v. Haas, 209 La. 343, 24 So.2d 610. The Court in that opinion cited and quoted from the case of Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366, 369. In dealing with the case the Supreme Court said [209 La. 343, 24 So.2d 615]:
“In Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366, 369, the company, which had already had ownership of the principal interest in the property, *533 acquired the undivided interest of one Maggie Cole at tax sale on October 17, 1899. This Court sustained the co-owner’s tax title, even though the property had not passed into the hands of third persons, on the ground that long acquiescence ratified the tax purchase by the co-owner. * * (See original opinion.)
We are of the opinion that the co-owners in this case, under the facts which we have covered fully in our opinion, have not exercised their rights within a reasonable time.
Rehearing refused.