ELLIS, Judge.
Plaintiff has filed this suit in which he prays to be recognized as the owner of an undivided one-half of the N.WJ4 of the SWj?4 of Section 1, Township 5, Range 10, containing 40.56 acres in the Parish of St. Tammany, Louisiana, and in which he further seeks to annul a sale for the unpaid taxes of 1945 assessed against said property which was made to the defendant, Commercial Cattle Co., Inc.
The defendant first filed an exception of no cause or right of action and plea of estoppel, which were overruled by the court. Answer was then filed, the case tried, and judgment rendered in favor of the defendant and against the plaintiff, dismissing his suit at his costs, and further annulling a contract to sell and purchase entered into by and between the plaintiff and defendant, Commercial Cattle Co., Inc.
The plaintiff has appealed from this judgment.
Defendant-appellee is not-urging its exception of no cause or right of action on appeal but is resting its case mainly upon the plea of estoppel raised in its answer.
The facts are not greatly in dispute and are simple and clear from the evidence. It is shown that on April 16, 1951, a contract to sell and purchase was entered into by and between the plaintiff and the defendant Commercial Cattle Co., Inc., represented by Morris J. Planche. In this contract it was provided that act of sale was to be passed before G. B. Baldwin of Sli-dell, La., purchaser’s attorney, Notary, on or before to 30 days from the date of acceptance, at expense of purchaser, “title to be delivered free and clear of all in-cumbrances, and subject to approval of purchasers attorney * * . “ * * * However, in the event any minor defects or irregularities should be found in the title by the examining attorney, the vendor shall be given a reasonable opportunity, to cure such defects at the vendor’s expense and the purchaser hereby agrees to extend the time of this contract for the purpose of perfecting title.”
It is shown by the testimony that Mr. Baldwin in pursuance of the contract examined the title for plaintiff, and plaintiff testified that he told him that the title could -not be cured. However,1 this information was not.given to the defendant but, instead, plaintiff then employed Mr. Raymond A. Saal who said that he could cure the title.
It is admitted that an examination of the title revealed that patent had been issued from the United States Government to Ezekial Brown in 1905; he1 in turn sold the property to the Covington Naval Stores in 1906, and they in turn had sold the property to Alexander B. Holliday on November 12, 1915, who, on December 11, 1928, sold an undivided V2 interest to.E. J. Frederick and Maurice P. Planche. Plolliday died on June 10, 1935, and his succession was opened in the Parish of Washington, however, the property in question was not listed nor inventoried in the succession proceeding. He left a widow and four children.
On April 1, 1940 Commercial Cattle Co., Inc., defendant herein, was organized and domiciled in the Parish of St. Tammany, Louisiana, with the following subscribers : Victor E. Planche, 98 shares; Catherine E. Planche, his wife, one share, and Noel Labourdette, one share. At this point it might be well to state that plaintiff alleged that Maurice P. Planche had acquired the ownership of the 98 shares formerly owned by Victor E, Planche, and his wife, Catherine E. Planche, still owned her share. This allegation was admitted in the defendant’s answer but on the trial of the case Maurice Planche testified that he did not own even one share. ■ Be this as it may, it appears that he was bound by the admission in his answer.
It is shown that Maurice Planche was authorized by the corporation to sign all *110 deeds and transactions of the Commercial Cattle Co., Inc.
Commercial Cattle Co., Inc. purchased the forty acres in question for the unpaid taxes for the year 1945. While this suit was filed against Maurice J. Planche and E. J. Fredericks, Sr., individually, they filed answer affirming and ratifying the title of the Commercial Cattle Co., Inc. as acquired under the tax deed.
Although the contract is plain in its requirement that the plaintiff, should he find any minor defects or irregularities in the title of the Commercial Cattle Company, Inc., would report same to the company and it would have an opportunity to cure such defects, the plaintiff utterly disregarded this provision of the contract. Mr. Baldwin by plaintiff’s own testimony reported the defect or irregularity in the title hut plaintiff did not report same to the company. Plaintiff now takes the position that he was only supposed to report minor defects. With this attempt to evade one of the main obligations of the contract we cannot agree. Plaintiff testified that he then took the matter up with another attorney, Mr. Saal, of Covington, La., and Mr. Saal told him that he could cure the title or that it could be cured, but, instead of notifying the Cattle Company, plaintiff through Mr. Saal prepared a quitclaim deed which he took to the city of Bogalusa in Washington Parish and attempted to get Mrs. Holliday and the heirs of Alexander Holliday to sign in his behalf.
On June 22, 1951 Mr. O. G. Price, the real estate agent handling the transaction for the plaintiff and defendant, wrote plaintiff asking “Is there a thing that the vendor, Mr. M. P. Planche, his aiding attorney Mr. Lindsey McDougall or any one can do to aid in preparing the act of sale on the 40 acres.
“We never hear from your attorney Mr. Baldin hence we do not know if there is a thing to be done. * * * Ask your attorney to advise us when he will be ready for passing the act of sale.”
No reply was made by the plaintiff to this letter because they were still attempting to secure the quitclaim from the Holliday heirs without defendant’s knowledge. As Mr. Saal testified, he had almost given up securing the alleged half interest of the Holliday heirs when some 18 months after the date of the contract to purchase and sell he received through the mails the quitclaim which he had left with the Holliday heirs many months before, and which had been kept a secret by the attorney and his client, the plaintiff, insofar as the Commercial Cattle Company was concerned. This quitclaim deed was signed on the 6th of September, 1952 for a consideration of $25 and “without warranty but with full substitution and subrogation in and to all rights and actions of warranty, which we have or may have against all preceding owners and vendors * *
As soon as the plaintiff and Mr. Saal received this quitclaim deed, the latter immediately notified Mr. Planche, whom he has previously told that the sale would be consummated and the Cattle Company would receive the entire amount of the purchase price, that they had purchased the Holliday heirs’ interest which was one half, and that Mr. Planche owned one-fourth and Mr. E. J. Fredericks, Sr. owned one-fourth and, therefore, plaintiff would only pay one-fourth of the price to each. Mr. Saal wrote a letter to this effect, and he also wrote a letter as to exactly what he had done with regard to the purchase of the Holliday heirs’ interest which is filed in the record. The Cattle Company refused and hence this suit, not to enforce the agreement but to be recognized as the owners of an undivided half interest in the property and to have the tax sale annulled upon the ground that Mr. M. P. Planche’s owning 98 percent of the stock in the corporation removed the latter from the category of an innocent third party and therefore the tax sale amounted to nothing more than the payment of taxes by one co-owner for another, which gave to the Holliday heirs the right within a reasonable time to return or repay the tax purchaser all taxes and costs expended on their behalf, and the petitioner therefore *111 deposited- in the registry of the court such sum.
There is no question that under a long line of jurisprudence and the recent case of Keller v. Haas, 202 La. 486, 12 So.2d 238, Id., 209 La. 343, 24 So.2d 610, that the purchase at tax sale by the defendant company constituted the purchase by one co-tenant of the interest of another co-tenant, which operated only as a payment of the taxes and did not constitute a divesture of title, provided the right of redemption was exercised by the co-tenant within a reasonable time. Cooper v. Edwards, 152 La. 23, 92 So. 721; Harrell v. Harrell, 174 La. 957, 142 So. 138; Dorion v. Locke, Moore & Co., 165 La. 57, 115 So. 366; Harris v. Natalbany Lumber Company, 119 La. 798, 44 So. 806; Vestal v. Producers Oil Company, 135 La. 984, 66 So. 334.
From the date of the tax sale to the Commercial Cattle Co., Inc. to the time plaintiff obtained the quitclaim deed from the Holliday heirs was approximately six years. The record shows that these heirs were fully aware of the situation for at least a year and a half and did not choose to themselves redeem the property but washed their hands of it by giving a quitclaim deed for the insignificant sum of $25. It is not necessary for a decision of this case that we pass upon the right of the Holliday heirs under the facts to have themselves redeemed the property, or the right of the plaintiff under his quitclaim deed to exercise such a prerogative. We believe that the plaintiff was estopped from purchasing in his own behalf the property in question in complete violation of the binding contract to sell and purchase. Each obligation in such a contract which is imposed on either party thereto constitutes a consideration for the other’s obligation as contained in the contract. Plaintiff, having obligated and bound himself to report any irregularity in the defendant’s title which he might find by virtue of his examination thereof to the defendant and having further agreed that the defendant should have additional time in which to cure any such irregularity, had placed himself in somewhat of a position as a fiduciary to the defendant and was estopped from gaining anything for himself by a violation of his obligation. There is no reason to doubt that the defendant could have cured the irregularity in the title by the same method the plaintiff employed, viz., a simple quitclaim from the Holliday heirs. It is evident that they themselves had no desire to exercise the right accorded them by law for with full knowledge of the facts they did nothing for approximately a year and a half. To allow the plaintiff to totally disregard his obligation under the contract would be in effect rendering an absolutely legal and binding contract worthless. While the plaintiff would not be designated as an agent of the defendant company, it is not necessary that such a relationship exist so as to estop one party from acting in antagonism or opposition to the interest of the other party to the contract in violation of the terms of the contract. Under the terms of the contract to purchase and sell plaintiff could not acquire title to the alleged half interest which he discovered as a result of his examination of the title in complete opposition and violation of the very terms of the contract.
The general doctrine applicable to any such case was stated in Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522, and again in Neal v. Daniels, 217 La. 679, 47 So.2d 44, 45, as follows:
“The plaintiff is not entitled to recover unless the defendant was in the actual employ of the plaintiff or was acting as his agent, as alleged. Under Article 3005 of our Civil Code, the agent is bound to restore to his principal whatever he has received by virtue of his procuration even should he have received it unduly. Under the jurisprudence of this court, as announced in Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522, 527, ‘The employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, *112 whether designated . agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to .the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. * * * ”
The two cited cases concerned principal and agent and in that respect'are not applicable, however, the doctrine expressed therein and approved is applicable to the case at bar for it says, “Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation * * * for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpiose. He cannot * * * acquire any private interest of his own in opposition to it. * * * ” (Emphasis added.)
Applying this doctrine to the present case, plaintiff could not disregard his obligation and acquire an adverse interest thereby to the defendant. Plaintiff was estopped until he had complied with the terms of the contract.
In addition we quote from the written reasons of the trial court:
“However, be that as it may, the plaintiff herein is invoking the equity jurisdiction of this court in order to obtain a half interest in this property, and it is axiomatic that he who seeks equity must' do equity. Dux[s]on v. Rouse, 123 La. 835 [49 So. 590].
“Under the facts and circumstances of this case, as heretofore outlined, it is apparent that this plaintiff is trying to take an unfair advantage of this defendant by violation of a contract which he entered into with the defendant to point out to the defendant any irregularities that might have been found.in .the title to the said property. Certainly in seeking to have the Court to grant him a half interest in the property under these circumstances, the plaintiff does not come into this Court with clean hands and he is clearly attempting- by this proceeding to enrich himself at the expense of another. To permit him to- do so would, in my opinion, not only be inequitable but unjust.”
The judgment of the District Court dismissed the plaintiff’s demands which, in effect, is a denial that he is the owner of an undivided half interest in the property, and the District Court further decreed the contract entered into between plaintiff and defendant for the sale of the property to be null and void.
The title to the property should be cleared. As the judgment stands the question undoubtedly will be asked, “Who now owns the Holliday heirs' undivided half interest?” Is the lower court’s judgment a denial" of their right to redeem and, therefore, the defendant acquired ■full title at the tax sale, or would the dismissal of plaintiff’s suit mean that the undivided half interest has reverted to the Holliday heirs, or should the judgment be construed as placing the title to the undivided half interest acquired by the quitclaim in the defendant as having inured to its benefit ?
It was and is impossible under the pleadings and the record for the learned District Judge or this court to go any farther than the judgment of the lower court, for the defendants in their answer simply prayed in the alternative that if the plaintiff’s suit was not dismissed and the contract of sale be held enforceable, then that the defendants receive the full amount of the consideration less the sum of $25 expended to secure the quitclaim deed. The defendant did not answer the appeal requesting any change in the judgment.
For the reasons assigned, the judgment of the District Court is hereby affirmed at the cost of plaintiff-appellant.