721 So.2d 977 (1998)
Hanson Evans SCOBEE, et al., Plaintiffs-Appellees,
v.
Mary Elizabeth Hardin BRAME, et al., Defendants-Appellants.
No. 98-564.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1998.
*978 Robert G. Nida, Alexandria, for Hansen Evans Scobee, et al.
Joe A. Brame, pro se.
David B. McCain, Lake Charles, for Joe A. Brame (Substituted Party).
Before YELVERTON, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
This appeal concerns a dispute over the ownership of property located in Vernon Parish. Henry Rice Scobee and Calvin Evans Hardin believed they each owned an undivided one-half interest in the property. In 1992, a title examination revealed there was no instrument in the public records evidencing Hardin's ownership interest. The sons of Henry Rice Scobee subsequently brought this declaratory action against Hardin's succession representative for recognition of their full ownership interest in the property. The trial court rendered judgment in favor of the Scobees, and the administrator of Hardin's succession appealed. Based on the following reasons, we affirm.

I.

ISSUES
We shall consider:
1. whether a tax redemption certificate is an act translative of ownership;
2. whether a 1992 letter written by a third party constitutes a counter letter which recognizes an ownership interest of Hardin;
3. whether the theories of estoppel and ratification are applicable; and,
4. whether a natural obligation exists between the two parties.

II.

FACTS
Plaintiffs-appellees, Hansen Evans Scobee and Henry Rice Scobee, Jr. (hereinafter "the Scobees"), claim a full ownership interest in 75 acres of land located in Vernon Parish, Louisiana. The property in dispute is described as the NE/4 of the SW/4 and West 15 acres in SE/4 of NW/4 and S/2 of the SW/4 of NW/4 Section 21, T1S, R5W. The Scobees are the sons of Henry Rice Scobee (hereinafter "H. R. Scobee"), and base their ownership claim on inheritance from their father and mother. It is undisputed that the Scobees' title can be traced to a 1919 recorded sheriff's deed to H.R. Scobee. However, H.R. Scobee and his first cousin, Calvin Evans Hardin, believed they were each owners of an undivided one-half interest in the property. Hardin was an attorney who notarized *979 the sheriff's deed where H.R. Scobee acquired ownership of the property.
In 1931, Hardin mortgaged an undivided one-half interest in the property, and he and H.R. Scobee redeemed the property in 1938 and 1941 from the state after the property was adjudicated to the state for the nonpayment of taxes. The trial court found there was no evidence to suggest how the property came to be assessed in the names of both Hardin and H.R. Scobee. Moreover, an undivided one half interest in the property was listed as an asset in the descriptive lists in the Succession of H.R. Scobee and the Succession of Mary Leonora Scobee.
In 1992, Willamette Industries submitted an offer to purchase the timber on the property. In a correspondence written in 1992 by a third party to Willamette Industries conveying acceptance of the offer, Henry Rice Scobee, Jr. signed an acknowledgment at the end of the letter that provided, "The offer of Willamette Industries, Inc., is acceptable." Subsequently, a title search by Willamette Industries revealed that the public records indicated title only in the name of the Scobees.
In March of 1993, the Scobees amended the Successions of H.R. Scobee and Mary Leonora Scobee to include a full ownership interest in the property. They filed suit against Hardin, through his administratrix, to quiet title to the property in July of 1994. Mary Elizabeth Hardin Brame, Hardin's administratrix, answered alleging the defenses of acquisitive prescription, estoppel, and ratification. She also argued that the 1992 letter was a counter letter and that a natural obligation existed between the two parties. After a trial on the merits, the trial court rejected Brame's arguments and rendered judgment in favor of the Scobees. Following the death of Mary Brame, Joe A. Brame substituted himself as party defendant and instituted this appeal.

III.

LAW AND DISCUSSION

Standard of Review
The issues in this case present questions of law. The standard of review is as follows:
Appellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. Phoenix Assur. Co. v. Shell Oil Co., 611 So.2d 709 (La.App. 4 Cir.1992). If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). In fact, when an appellate court finds that a reversible error of law or manifest error of material fact was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Ducote v. City of Alexandria, 95-1269, p. 2 (La.App. 3 Cir. 7/17/96); 677 So.2d 1118, 1120.

The Nature and Effect of the Tax Redemption
Brame, on behalf of Hardin's estate, asserts that Hardin acquired ownership of an undivided one-half interest in the property pursuant to the 1938 tax redemption. The redemption occurred more than three years after the first adjudication of the property to the state in 1933. Brame argues that absolute title vested in the state after the three year redemption period elapsed. Thus, when Hardin and H.R. Scobee redeemed the property in 1938, Hardin acquired a one half interest in the property. Following the redemption, taxes were assessed in the names of both Hardin and Scobee.
The Scobees assert that after the redemption period elapsed, the property remained subject to redemption because the state had not sold the property or dedicated the property to public use. The redemption simply restored title to the property to the condition that existed prior to the adjudication. H.R. Scobee was the record owner of the property prior to the adjudication. Redemption in the names of Hardin and Scobee did not vest a one-half ownership interest in Hardin. Moreover, the Scobees note that there is no *980 evidence to explain how the property came to be assessed in the names of Hardin and Scobee or who paid the money to redeem the property. Regardless, the Scobees argue that the mere assessment of property to an individual does not constitute him the owner per se. To do so would impair the title to property throughout the state as assessors routinely list property on the assessment roles in the name of a single owner in cases where there are multiple owners. To vest title in Hardin in this case would divest title in countless cases where an adjudication and redemption is made in the name of one of several owners.
The trial court held that the redemption of the property reinstated the property to its original status. The Certificate of Redemption provides that for the payment of $5.61 for taxes due:
the property is redeemed to said Hardin and Scobee against whom or which said taxes were assessed, provided for by Act 47 of 1938. And the said Hardin and Scobee having redeemed the said above described property by paying all the taxes, interest, costs and penalties aforesaid, the said Hardin and Scobee as Owners is [sic] legally subrogated to all rights, liens and mortgages of the State incident to and growing out of the taxes for the year[] 1931 ... (emphasis added).
The Certificate of Redemption that was issued in 1941 contains identical language. The trial court found that "these are clearly redemption deeds restoring the property to the prior record owner."
We agree with the trial court. Under the law in effect at the time of the redemptions, property adjudicated to the state for the nonpayment of taxes can be redeemed at any time during the three years from the date of the adjudication. La. Const. art. X, § 11. Even after the redemption period has elapsed, the tax debtor or other interested persons may redeem the property as long as the state has not sold the property or dedicated it to public use. See Hill v. Pipes, 236 La. 105, 107 So.2d 409 (La.1958). In Allen v. Paggi Bros. Oil Co., 244 So.2d 116, 119 (La. App. 3 Cir.1971), writ denied, 258 La. 247, 245 So.2d 716 (La.1971), we held that an adjudication and redemption "does not create a new title, but simply effaces the tax sale and restores title to its status existing prior to such sale." See also Housing Authority of City of Shreveport v. Breen, 10 So.2d 395 (La.App. 2 Cir.1942).
We hold that the 1938 tax redemption in the names of Hardin and Scobee simply restored title to the prior record owner, H.R. Scobee. It is true that after the three year redemption period elapsed, the state had authority to sell the property. However, a sale of property after the redemption period has elapsed requires that the property be advertised and appraised. La.R.S. 47:2189. In this case, the absence of an advertisement and appraisal, as well as the language of the Certificate of Redemption, clearly indicate that the certificate was not intended to be an act translative of title. Thus, the trial court did not err in finding that Hardin did not acquire an undivided one half interest in the property as a result of the tax redemption.
Moreover, we reject Brame's argument that the tax assessments in the names of Hardin and Scobee reflect Hardin's ownership interest in the property. In Griffing v. Taft, 151 La. 442, 91 So. 832, 834 (La.1922), the Louisiana Supreme Court held that the mere assessment of taxes to an individual does "not constitute him the owner per se." In Griffing, the plaintiffs claimed title through their ancestor, Jabish Griffing. Although Griffing conveyed the property at issue to Union Bank, the property continued to be assessed in the name of Jabish Griffing for several years until it was adjudicated to the state for the nonpayment of taxes. With regard to the erroneous assessment of the property, the court reasoned:
While the plaintiffs assert that Jabish Griffing was the owner of this property during these years, they have filed in the record no title to him from the Union Bank, nor, from any subsequent owner, to prove this assertion. The mere assessment to Jabish Griffing of this property... did not constitute him the owner per se.
Id. In this case, the Scobees' title can be traced directly to the 1919 sheriff's deed *981 where H.R. Scobee acquired ownership of the property. Hardin does not have an act translative of title to establish his ownership interest; furthermore, the tax assessments in his name are insufficient to establish title.

The 1992 Letter to Willamette Industries
Brame contends that a letter written by Frank M. Brame to Willamette Industries in 1992 concerning Willamette's offer to purchase timber on the property is a counter letter. Henry Rice Scobee, Jr., individually and on behalf of his brother, signed an acknowledgment at the conclusion of the letter which provided, "The offer of Willamette Industries, Inc., is acceptable." Brame asserts that the 1992 letter constitutes an agreement between the Scobees and Hardin whereby the Scobees recognized Hardin's ownership interest in the property.
The trial court found that the Scobees intended the letter to be only a confirmation of Willamette's offer to purchase the timber on the property. We agree with the trial court. A counter letter is a contract "between a record owner(s) and non-record owner(s) whereby the record owner recognizes the true ownership interest of the non-record owner." Whittington v. Bienvenu, 539 So.2d 832, 835 (La.App. 3 Cir.1989), citing Karcher v. Karcher, 138 La. 288, 70 So. 228 (La.1915). In this case, the letter was written by a third party to Willamette Industries, and Henry Rice Scobee, Jr. simply signed a notation at the end of the letter indicating the Scobees' acceptance of Willamette's offer. The notation does not evidence an intention by the Scobees to recognize Hardin's ownership interest. In fact, the letter and notation are addressed to Willamette Industries, not to Hardin.

The Applicability of the Theories of Estoppel and Ratification
Brame contends that the Scobees should be estopped from asserting a full ownership interest in the property because their inactivity and acquiescence for almost 60 years amount to ratification of Hardin's interest in the property. Brame emphasizes that Hardin paid taxes on half the property for over 50 years and that only an undivided one-half interest in the property was listed in the original succession pleadings of H.R. Scobee and Mary Scobee. Brame asserts that the public records contain many documents where H.R. Scobee and his sons admitted they only owned a one-half interest in the property.
The Scobees argue that the payment of property taxes by Hardin did not convey to Hardin an ownership interest in the property. As the payment of property taxes by itself is insufficient to establish corporeal possession for the purpose of acquisitive prescription, see Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 82 So.2d 765 (La.1955), it should likewise be insufficient to establish title according to equity. Moreover, the Scobees' failure to include the full ownership interest in the property in the original succession proceedings for Mary Scobee and H.R. Scobee does not deprive them of their ownership rights.
The trial court found that the theory of estoppel is inapplicable because the Scobees did not delay in filing suit to quiet title to the property once they learned of their full ownership interest. We agree with the trial court's conclusion that estoppel is inapplicable.
Brame erroneously cites La.Civ.Code art. 21 to support the argument that estoppel applies to this case. Article 21 has been replaced by La.Civ.Code art. 4, which provides in relevant part: "When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity." We find that Article 4 is inapplicable because there is legislative and jurisprudential authority to resolve this case. Moreover, as the Louisiana Supreme Court has noted:
`It has long been a fundamental principle deeply embedded in our law and jurisprudence that title to realty cannot be established by waiver or by estoppel; for one can never be divested of his title to realty except in the manner prescribed by law' such as by deed, inheritance, or prescription.
Monk v. Monk, 243 La. 429, 144 So.2d 384, 387-88 (La.1962) (citations omitted).
*982 It is undisputed that the Scobees are the record owners of the property. Their title can be traced to a 1919 recorded sheriff's deed to H.R. Scobee. In fact, Hardin was the attorney who notarized the deed; consequently, he should have understood the need to have proper documentation to establish ownership of the property. Moreover, if Hardin had examined the public records in 1941 when he began paying taxes on the property, he would have realized that he did not own the property.
The existence of documents in the public records, such as the original pleadings for the Succession of Mary Scobee and H.R. Scobee which do not assert full ownership of the property, does not create an ownership interest in favor of Hardin. The Louisiana Supreme Court has held that "the law of registry does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded." Phillips v. Parker, 483 So.2d 972, 975 (La.1986). As already noted, H.R. Scobee's deed where he acquired ownership of the property was properly recorded in 1919 and is thereby effective against third parties such as Hardin.
We reject Brame's argument that we should disregard the public records and vest an undivided one-half interest in the property in Hardin for equitable reasons. The Scobees can trace their title to H.R. Scobee's deed. Their delay in asserting a full ownership interest in the property does not divest them of their title. See Bishop v. Copeland, 222 La. 284, 62 So.2d 486, 489 (La.1952) (holding that "mere silence and delay cannot effect a loss of title to property other than by the laws of prescription"). We distinguish Bridges v. Trevino, 64 So.2d 528 (La.App. 1 Cir.1953), a case relied upon by Brame. In Bridges, the court held that it would not be "fair and equitable" to recognize the ownership interest of prior co-owners of property because they failed to pay their share of taxes to the co-owners who purchased the property at a tax sale. Id. at 531. Bridges is distinguishable because in that case, there was a tax sale which actually transferred title to the property. The other co-owners were notified of their option to redeem their interest in the property by paying their share of the taxes, yet they failed to do so. Id. This case involves an adjudication and redemption of property, not a tax sale. Moreover, Hardin does not have an act translative of title, did not acquire ownership of the property by acquisitive prescription, and did not inherit the property.

The Existence of a Natural Obligation
Brame contends that the Scobees have a natural obligation to recognize Hardin's ownership interest in the property. He argues that the redemption of the property in the names of Hardin and Scobee reflects Scobee's intent that Hardin owned one-half of the property. This intent was confirmed when the property was again redeemed by Hardin and Scobee in 1941. Thus, Brame concludes that the Scobees have a moral duty to abide by the "common intentions" of Hardin and Scobee.
The Scobees assert that a natural obligation simply creates cause for a new contract to replace an unenforceable contract. They argue that in this case, there is no contract at all between the two parties, nor did one ever exist between Hardin and H.R. Scobee. The Scobees note that there is no proof as to how the property came to be assessed in the names of Hardin and Scobee, and there is no proof as to who actually paid the price for the redemptions of the property.
We agree with the trial court's finding that Brame failed to prove the existence of a natural obligation between the parties. Moreover, La.Civ.Code art. 1761 provides:
A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed.
A contract made for the performance of a natural obligation is onerous.
Thus, even if a natural obligation exists between the parties, we cannot enforce it. Furthermore, we agree with the trial court that there were no actions by the Scobees that constitute performance in compliance with a natural obligation. We distinguish *983 Succession of Harrison, 444 So.2d 1191 (La. 1984), a case relied upon by Brame. In Harrison, the heirs of Emmanuel Harrison signed an instrument asking the court to give full effect to an invalid will. The court held that the invalid will created a natural obligation, and the instrument signed by the heirs was a new contract made in compliance with the natural obligation. Id. at 1195. In this case, unlike the heirs in Harrison, the Scobees deny that a natural obligation exists, and they did not form a contract with Hardin to perform a natural obligation.

IV.

CONCLUSION
Based on the foregoing reasons, we affirm the judgment of the trial court recognizing the Scobees' full ownership interest in the property. Joe A. Brame, defendant-appellant, is cast for all costs of this appeal.
AFFIRMED.