677 So.2d 1118 (1996)
Joseph Paul DUCOTE, Plaintiff-Appellant,
v.
CITY OF ALEXANDRIA, et al., Defendants-Appellees.
No. 95-1269.
Court of Appeal of Louisiana, Third Circuit.
July 17, 1996.
*1119 Todd Lee Farrar, Ball, for Joseph Paul Ducote.
*1120 Eugene Joseph Sues, Alexandria, for City of Alexandria et al.
Before DOUCET, C.J., and KNOLL, THIBODEAUX, WOODARD, and GREMILLION, JJ.
WOODARD, Judge.
Joseph Paul Ducote filed a suit for conversion against the City of Alexandria and its general liability insurer. The court below found no liability on the City's part. Ducote appeals the trial court's judgment. For the following reasons, we reverse.

FACTS
On January 19, 1994, by a notarized bill of sale for $100.00, Joseph Ducote purchased from Kerry M. Guinn a 1986 Dodge Ram-50 truck, which Guinn's mother, Marsha Jane Guinn, had given Kerry by an act of donation. On January 28, 1994, Ducote stopped to wash the truck at an automated car wash, where an officer of the Alexandria City Police had been dispatched, pursuant to Ms. Guinn's complaint that her truck had been stolen. She had been looking for the truck hoping it would lead to her missing son. When she spotted the truck, she informed the police department of its whereabouts, and they promptly dispatched an officer to the car wash. Upon his arrival, he informed Ducote that the vehicle had been reported stolen. Ms. Guinn was there, as well. She showed the officer an application for a certificate of registration, dated January 28, 1994, which, it was learned at trial, she had obtained from the Department of Motor Vehicles (DMV) by presenting a forged act of donation from her son to herself. Ducote showed the officer his bill of sale, dated January 19, 1994, and proof of insurance as evidence that he had purchased the truck, and told him that he had applied for a title and was waiting for it to come in. Nevertheless, the officer tendered the vehicle to Ms. Guinn, since she had the most recent paperwork, and he thought Ducote's bill of sale might have been fraudulent. Obviously believing, at this point, that no crime had been committed, he did not arrest Ducote for theft. Instead, he advised him that this was a civil matter and that he should seek the advice of an attorney. It is also noteworthy that no criminal charges or report was ever filed on this matter.
Ducote filed suit against the Alexandria City Police, alleging that the seizure of his truck constituted a taking of property without due process of law. When the matter was tried on May 30, 1995, the trial judge dismissed his demands. He appeals this decision.

LAW
Appellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. Phoenix Assur. Co. v. Shell Oil Co., 611 So.2d 709 (La.App. 4 Cir.1992). If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court. Kem Search, Inc., v. Sheffield, 434 So.2d 1067 (La.1983). In fact, when an appellate court finds that a reversible error of law or manifest error of material fact was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840 (La. 1989).

GOVERNMENTAL IMMUNITYAPPLICABILITY OF LA.R.S. 9:2798.1
Although the defendants did not raise immunity as a defense, we begin our review with that question, since it could be dispositive of the case. Under certain circumstances, La.R.S. 9:2798.1 provides immunity from liability for certain acts carried out by police officers in the course of their duties. The statute specifically states that:
Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties. La.R.S. 2798.1(B) [emphasis added].
In the case before us, the defendant dispatched one of its officers pursuant to what *1121 should have been a highly suspect verbal complaint of a stolen vehicle. After arriving at the scene, the officer, acting under the direction of his superiors, compared Ducote's bill of sale to Ms. Guinn's application for registration. While he testified that he initially thought that the signatures on the bill of sale appeared to be fraudulent, he said that Ms. Guinn had told him that she had signed over the vehicle to her son, that her son had signed it back to her, and that he had found that to be suspect because it was not DMV's normal procedure. Yet, despite his suspicion of Ms. Guinn's assertions, he did not question her or check with the DMV. Presumably, a call to the DMV would have, inter alia, verified Ducote's application for title. Additionally, Ducote presented him with proof of insurance he had obtained on the truck, which the officer apparently ignored and did not inquire with the insurance company. At the very least, further inquiry to his own department should have put him on notice that: approximately the third week of January, Ms. Guinn had reported her son and "her" truck as missing and that another officer had told her that she could not report the truck as missing because it was not in her name; she returned to him a few days later with an application form for a certificate of registration on which she had designated herself as the owner; he never asked her if her son had returned and, if not, how she had obtained this document, purporting to title the truck from him to her after she had reported him missing; he arranged with Ms. Guinn to have an officer sent to the location of the truck once she discovered it; when the officer, with whom Ms. Guinn had made these arrangements, left the office, he apprised another officer of "what was going on" so that he could dispatch someone when Ms. Guinn called in. Apparently, none of this valuable information, raising serious questions concerning the validity of Ms. Guinn's paperwork, was ever communicated to the officer dispatched to the scene, when he was advised how to handle both parties' claim to the truck.
Once he determined that no crime was actually involved, the officer was correct in his advice to Ducote, that this was a civil matter. The problem was his next step, removing the truck from its rightful owner, Ducote, without legal authority to do so. We have found no authority for law enforcement to make civil judicial determinations regarding ownership or possessory rights of property.
Further, La.R.S. 9:2798.1(B) provides that:
Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
La.R.S. 9:2798.1 protects the government from liability only at the ministerial or policy making level. Fowler v. Roberts, 556 So.2d 1 (La.1989). Ministerial decisions or actions enjoy immunity only when they are discretionary and based on a consideration of public policy. Id. The court in Mathieu v. Imperial Toy Cor., 92-1182 (La.App. 4 Cir. 3/17/94), 632 So.2d 375, 380, writ granted, 94-0952 (La. 6/17/94), 638 So.2d 1075, reversed on other grounds, 94-952 (La. 11/30/94), 646 So.2d 318, stated:
This discretionary function exception to governmental liability applies only when a policy judgment is made at the ministerial level, not at the operational level. Fowler v. Roberts, 556 So.2d 1 (La.1989). The distinction between the two was recently demonstrated in Kniepp v. City of Shreveport, 609 So.2d 1163 (La.App. 2 Cir.1992), writ denied, 613 So.2d 976 (La.1993), where owners of property damaged in a riot asserted that police conduct caused their losses. The Court found that the police chief's order to withdraw from the area of the disturbance, leaving the plaintiff's stores exposed to damage by rioters, was a discretionary policy choice to protect life over property. Therefore, R.S. 9:2798.1(B) applied to shield that City from liability. No immunity was found, however, for the acts of the patrolmen who were first on the scene and whose conduct allegedly angered bystanders and led to the riot. Their decisions were operational, not based upon a balancing of social policy.
*1122 In the case sub judice, the officer clearly was acting at the operational level. His decision to deprive Ducote of his vehicle was not based on any balancing of social policy, but was a judicial decision as to ownership. It is just as clear that the officer (even if his actions were well intentioned) effected a conversion of plaintiff's vehicle. Under the facts of this case, such action by the officer, being operational in nature and not within the course and scope of his lawful power and duties, triggers no shield from immunity for the city. Id.

BAD FAITH; UNREASONABLE AND ARBITRARY; WITHOUT JUST CAUSE
By his first assignment of error, plaintiff contends that the trial court erred by applying an incorrect legal standard to the defendants' conduct. In his oral reasons for judgment, the trial judge stated that "the burden of proof is on the plaintiff to show that the officers engaged in this action acted unreasonable and arbitrary, and without good cause, and in bad faith really." Ducote contends that the trial court erred in requiring him to prove that the defendant acted in bad faith or acted unreasonably. We agree.
A conversion is defined as any wrongful exercise or assumption of authority over another's goods, depriving him of possession, permanently or for an indefinite time. One does not have to prove that the defendant consciously engaged in wrongdoing, [Labbe v. Premier Bank, 618 So.2d 45 (La.App. 3 Cir. 1993)], and good faith on the part of the defendant is not a defense to the tort of conversion. W. Prosser & W. Keaton, Torts, Section 15, p. 97 (5th ed. 1984). It is necessary to show only an intent to exercise a dominion or control over the goods inconsistent with the plaintiff's rights. Lincecum v. Smith, 287 So.2d 625 (La.App. 3 Cir.1973), writ refused, 290 So.2d 904 (La.1974). A mere erroneous delivery to the wrong person constitutes a conversion, even though the defendant acted in the utmost good faith and in the honest belief that the delivery was lawful and proper. Prosser, Section 15, P. 96-97. Thus, we find that, by requiring plaintiff to prove bad faith, the trial court applied the wrong legal standard.
When the officer made a judicial determination that Ms. Guinn was the owner of the truck, rather than Ducote, and then gave her possession, he exercised dominion over the vehicle inconsistent with the rights of Ducote, its rightful owner. We find that the defendants' interference with the plaintiff's rights was so grave as to constitute conversion.

DAMAGES
As the trier of fact in the case sub judice did not award damages, we must examine the record de novo to determine those proven. Rosell, 549 So.2d 840.
The plaintiff seeks damages for the value of the truck, for his loss of use or enjoyment of the truck, mental anguish, inconvenience and humiliation, and lost wages.
Traditionally, damages for conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion [Simon v. Fasig-Tipton Co., 92-173 (La.App. 3 Cir. 3/22/95), 652 So.2d 1351, writ denied, 95-1010 (La. 6/2/95), 654 So.2d 1111], as well as mental anguish and inconvenience arising from the lost use of the property. Alexander v. Qwik Change Car Center, Inc., 352 So.2d 188 (La.1977).
While plaintiff failed to produce expert testimony of the truck's fair market value, we find that his testimony showed that the partially wrecked truck had a minimum value of $100.00, which is what Ducote paid for it, and the parties stipulated amount of $1,047.26, for the cost of equipment and other items he purchased for the benefit of the truck, less $119.97 for the radio which he removed. Further, we find that the defendant's action caused him the loss of use and enjoyment of this, the first vehicle he had ever owned, as well as a loss of sleep, mental anguish, inconvenience, and humiliation and that $1,500.00 is an appropriate award. John Deere Co. v. Eames, 556 So.2d 959 (La.App. 3 Cir.1990).
As to lost wages, we find insufficient evidence in the record to establish that plaintiff's reason for not working was because he had no transportation and deny that request.

*1123 CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. The costs of this appeal are assessed to defendants-appellees.
REVERSED AND RENDERED.
DOUCET, C.J., dissents and assigns reasons.
KNOLL, J., dissents and assigns reasons.
DOUCET, Chief Judge, dissenting.
I respectfully dissent from the majority opinion in this matter. La.R.S. 9:2798.1 protects the City of Alexandria from liability for acts or omissions by its employees "within the course and scope of their lawful powers and duties" which do not "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." Id. The trial court found as a matter of fact that Officer Poole did not act unreasonably. The record adequately supports the conclusion that the trial court was not manifestly erroneous in so finding. Therefore, I would affirm the judgment of the trial court.
KNOLL, Judge, dissenting.
I disagree with the majority opinion because in my view the city of Alexandria is protected by the public duty doctrine as set out in La.R.S. 9:2798.1, which states in pertinent part:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
* * * * * *
2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
In Rick v. State, DOTD, 93-C-1776, 93-C-1784 (La. 1/14/94), 630 So.2d 1271, the Louisiana Supreme Court clarified the application of La.R.S. 9:2798.1, stating:
A two-step analysis determines whether the exception applies. Berkovitz by Berkovitz v. U.S., 486 U.S. 531, 108 S.Ct. 1954 [100 L.Ed.2d 531] (1988). First a court must determine whether the action is a matter of choice. If no options are involved, the exception does not apply. If the action involves selection among alternatives, the court must determine whether the choice was policy based. Decisions at an operational level can be discretionary if based on policy. U.S. v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267 [113 L.Ed.2d 335] (1991).
Rick, 630 So.2d at 1276.
Clearly, La.R.S. 9:2798.1 is applicable to the case sub judice. Officer Poole was faced with a selection among alternatives: either he would return the truck to the plaintiff, or he would turn it over to Ms. Guinn. He was presented with two sets of documents on the truck, and he chose to turn it over to Ms. Guinn, who had reported the truck stolen, and who possessed the most recent documentation. He decided not to return it to the plaintiff because the plaintiff's bill of sale appeared to be fraudulent. It is apparent that Officer Poole's decision was based on several policy considerations. First, he informed the plaintiff that this was a civil dispute and that he should consult an attorney. Further, he relied on the validity of the documents issued by the DMV in deciding to whom to tender the truck.
The liability of public entities for damages caused in exercise of their lawful duties is different from that of persons in their individual capacity. When one private citizen handcuffs another, a battery has been committed; but when a police officer handcuffs a suspect, the same standard does not apply. The actions of the officer must be unreasonable in order for liability to attach.
Thus, the city of Alexandria is protected by the statute unless Officer Poole's actions are found to be "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." Moreover, the manifest error doctrine applies to the factual findings of the trial court, and the record before us clearly supports that the trial court's factual findings are not manifestly *1124 erroneous. Since the trial court stated in its factual findings that the officer's conduct was not unreasonable, its judgment should be upheld.
A significant factual finding by the trial court was that plaintiff "had failed to show any act of the defendant which would subject him to damages for an illegal seizure of plaintiff's vehicle."
Despite plaintiff's claims of loss of value, use, and enjoyment of the truck and his mental anguish and humiliation, he never made any attempt to regain possession of the vehicle from Mrs. Guinn. It seems that plaintiff was more interested in the "deep pockets" of the defendant than in reclaiming his vehicle and bringing this matter to closure. I find it difficult to reconcile plaintiffs claims of mental anguish over the loss of his vehicle with his indifference regarding its return.
For the foregoing reasons, I respectfully dissent.