713 So.2d 723 (1998)
Alfred JACQUET, Jr., Plaintiff-Appellant,
v.
SOUTHERN STRUCTURES, INC., et al., Defendants-Appellees.
No. 97-1696.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1998.
*725 Alfred Frem Boustany, II, Lafayette, for Alfred Jacquet, Jr.
Charles J. Foret, Lafayette, for Southern Structures, Inc., et al.
Before THIBODEAUX, SAUNDERS and DECUIR, JJ.
THIBODEAUX, Judge.
This appeal involves a denial by the Office of Worker's Compensation (hereinafter "OWC") of compensation benefits to an injured employee for his future medical expenses. Alfred Jacquet, Jr. filed a claim for additional compensation benefits against Southern Structures, Inc., and its insurer, Business Insurance Company. The workers' compensation judge dismissed Mr. Jacquet's claim with prejudice, asserting that he had received all benefits to which he was entitled under the Louisiana Workers' Compensation Act. From this judgment, Mr. Jacquet appeals.
Based on the following reasons, we affirm in part and reverse in part the decision of the workers' compensation judge.
I.
ISSUES
We shall consider:
1. whether the workers' compensation judge erred by refusing to consider the medical report of Dr. John Cobb and by failing to order an independent medical examination in light of conflicting medical opinions concerning the physical condition of Mr. Jacquet; and
2. whether the workers' compensation judge erred in finding that Mr. Jacquet was not entitled to additional future medical expenses.

II.

FACTS
The parties stipulated that on December 8, 1995, Albert Jacquet, Jr. was injured while working in the course and scope of his employment with Southern Structures, Inc. At the time of his injury, Mr. Jacquet's average weekly salary was $257.25. After the accident, Mr. Jacquet received a weekly compensation of $171.51. He received this weekly benefit through April 13, 1997.
Mr. Jacquet injured his neck and lower back when he was pulled to the ground by a mechanical chain belt within which his clothing had become entangled. On the day of the accident, he was initially treated at the emergency room of the Lafayette General Medical Center. Thereafter, Southern Structures referred Mr. Jacquet to Dr. Ray Boyer, who subsequently referred him to Dr. Gregory Gidman, an orthopedics specialist. Mr. Jacquet was under the care and treatment of Dr. Gidman for nearly seventeen months after the accident.
Dr. Gidman initially diagnosed Mr. Jacquet with a strain or contusion of the chest and left upper extremity and lumbar spine. Dr. Gidman recommended physical therapy and medication as a means to resolve the pain in his neck and lower back regions. Dr. Gidman further conducted MRI tests, bone scans, and nerve studies on Jacquet's neck and lumbar spine. The test results revealed a large herniated disc in his lumbar spine. After diagnosing Jacquet's condition, Dr. *726 Gidman suggested that Jacquet would possibly require spinal surgery to remedy his injury. He referred him to Dr. Jack Hurst, a neurosurgeon.
On August 20, 1996, Dr. Hurst performed surgery on Mr. Jacquet's lumbar spine. Following the surgical procedure, Dr. Gidman performed tests to track Jacquet's physical rehabilitation. In March 1997, at the request of Southern Structures, Glenn Guidry, a representative of Rehabilitation & Vocational Consultants, Inc., prepared job analyses on various job assignments which Southern Structures was willing to offer Mr. Jacquet. Mr. Guidry discussed and explained the duties of each proposed job with Dr. Gidman and Dr. Hurst to determine whether Mr. Jacquet could actually perform the tasks associated with the jobs. Both Dr. Hurst and Dr. Gidman opined that Jacquet could perform the proposed job tasks.
Dr. Gidman's report of April 9, 1997 recommended that Mr. Jacquet could return to work and perform medium level work activity but should avoid heavy lifting and repetitive bending. Mr. Jacquet's compensation benefits were terminated on April 13, 1997, the day before his scheduled return to work. On April 14, 1997, Mr. Jacquet attempted to return to a light-duty job, performing panel line quality control, but he could not complete the work day due to an onset of back pain and dizziness.
On April 28, 1997, Dr. Gidman conducted a functional disability evaluation on Mr. Jacquet to ascertain the degree of work activity which Jacquet was capable of performing. In his evaluation, Dr. Gidman concluded that Mr. Jacquet had sustained 10% impairment of his whole body but could return to light activity at work. On May 21, 1997, in his final report regarding Mr. Jacquet's condition, Dr. Gidman opined that Jacquet could perform at least light activity at work and progress to medium level activity. Dr. Gidman further stated that he would treat Mr. Jacquet on an "as needed" basis.
Dissatisfied with the medical treatment provided by Dr. Gidman, Mr. Jacquet consulted with his attorney, who referred him to Dr. John Cobb. On June 18, 1997, after examining Mr. Jacquet, Dr. Cobb recommended revision surgery and opined that Jacquet was unable to return to work at that time.
Thereafter, Mr. Jacquet filed a workers' compensation claim against Southern Structures, Inc. and its insurer, Business Insurance Company, seeking additional compensation benefits for his future medical expenses. The workers' compensation judge dismissed Mr. Jacquet's claim with prejudice, stating that the claimant failed to sustain the burden of proving an entitlement to additional benefits and that all benefits to which the claimant was entitled had been paid by the time of the hearing.

III.

LAW & DISCUSSION

Standard of Review
An appellate court may not set aside the factual findings of a worker's compensation judge in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). "[W]here there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Id. at 844. However, a reviewing court may reverse a factfinder's determinations if such factual findings are not reasonably supported by the record and are clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

Assignment of Error Number One
The plaintiff contends that the workers' compensation judge erred by failing to order an independent medical examination in light of conflicting medical opinions regarding the plaintiff's physical condition. Additionally, the plaintiff contends that the workers' compensation judge erred by refusing to consider the medical report of Dr. John Cobb. To the extent the plaintiff argues that Dr. Cobb's report was erroneously excluded from the workers' compensation judge's consideration of this matter, we agree with the plaintiff's *727 argument. Regarding all other respects of the plaintiff's argument, we disagree.
We find that the workers' compensation judge, in declining to consider Dr. Cobb's report, misinterpreted the statutory intent and purpose of La.R.S. 23:1121(D). Generally, the judicial interpretation of a statutory provision presents a question of law. Further,
[a]ppellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. Phoenix Assur. Co. v. Shell Oil Co., 611 So.2d 709 (La.App. 4 Cir.1992). If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). In fact, when an appellate court finds that a reversible error of law or manifest error of material fact was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Ducote v. City of Alexandria, 95-1269, p. 2 (La.App. 3 Cir. 7/17/96); 677 So.2d 1118, 1120.
In pertinent part, La.R.S. 23:1121(D) provides:
After all examinations have been conducted but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee's fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of R.S. 23:1123 shall be followed.
La.R.S. 23:1123 states:
If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
Pursuant to La.R.S. 23:1121(D) and prior to being ordered to return to work, an injured employee is statutorily authorized to request an examination from a physician of his own choosing to determine the employee's fitness to return to work. Any subsequent medical evaluations or reports derived therefrom must be considered by the OWC when determining the work status of an injured employee.
Although he was cleared by Dr. Gidman to return to work on April 14, 1997, Mr. Jacquet remained under the care of Dr. Gidman beyond the date of his failed attempt to return to work. Mr. Jacquet continued his medical treatment under the supervision of Dr. Gidman. The record shows that Dr. Gidman examined Mr. Jacquet on April 21 and May 21, 1997, respectively.
Expressing displeasure with the treating physicians, Drs. Hurst and Gidman, Mr. Jacquet, consulted a third physician, Dr. Cobb, at his own expense. The sole purpose of Dr. Cobb's examination was to ascertain Jacquet's fitness to return to work. At the time of Dr. Cobb's examination, Mr. Jacquet had not been ordered to return to work. In fact, he was seeking a third medical opinion regarding his physical condition and his fitness to work.
Therefore, in accordance with La.R.S. 23:1121(D), the medical report of Dr. Cobb must be considered in addition to the reports presented by Drs. Gidman and Hurst. The refusal of the workers' compensation judge to consider Dr. Cobb's report constitutes an error of law. We determine that the workers' compensation judge erred in its application of La.R.S. 23:1121(D) to the facts of this suit and that Dr. Cobb's report should have been considered by the workers' compensation judge in its weighing of the evidence.
*728 Still, assuming Dr. Cobb's report had been considered, we find that the decision of the workers' compensation judge not to order an independent medical examination was correct. In this instance, there were conflicting medical opinions among the plaintiff's treating physicians. Both Dr. Gidman and Dr. Hurst opined that Mr. Jacquet could return to work and perform light to medium work activities. Conversely, Dr. Cobb opined that Jacquet required additional surgery and was temporarily incapable of returning to work. The medical opinion of Dr. Cobb was contradictory to the medical opinions of Dr. Gidman and Dr. Hurst.
Under La.R.S. 23:1121(D), if disagreement exists regarding an injured employee's fitness to return to work, a party may avail itself to La.R.S. 23:1123 and request that the OWC order an independent medical examination. The OWC is not required to order an independent medical examination on its own initiative. The record shows that, despite the existence of conflicting medical opinions, neither Mr. Jacquet nor Southern Structures requested an independent medical examination under La.R.S. 23:1123. Therefore, we conclude that the workers' compensation judge did not abuse his discretion by failing to order an independent medical examination.

Assignment of Error Number Two
The plaintiff contends that the workers' compensation judge erred by denying his request for additional compensation benefits regarding his future medical expenses. The plaintiff argues that, due to complications from his work-related injury and subsequent surgery, he will need future medical treatment. Therefore, the plaintiff argues, in light of these future medical expenses, he is entitled to additional future medical expenses. We agree.
Governing the duty of an employer to furnish the medical expenses of its employee, La.R.S. 23:1203(A), in pertinent part, states:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.
In his reasons for judgment, the workers' compensation judge equated compensation benefits for future medical expenses with compensation benefits associated with employee disability. We distinguish these two types of benefits and the criteria for entitlement to each. An award of compensation benefits for future medical expenses is separate and distinct from an award of disability benefits. An injured employee's entitlement to benefits for medical expenses exists even if he returns to work, provided he needs further medical treatment for the work-related injury. However, an injured employee's entitlement to disability benefits is triggered only after a showing, by clear and convincing evidence, of either temporary total disability or permanent total disability.
The plaintiff seeks additional benefits for his future medical expenses. Thus, he is required to prove only a need for future medical treatment, as opposed to a temporary or permanent disability. The plaintiff's compensation benefits were terminated on April 13, 1997. The record shows that the plaintiff required medical treatment beyond April 13, 1997. As previously discussed, Dr. Gidman examined Mr. Jacquet on April 21 and May 21, 1997, respectively.
In his medical report, dated May 21, 1997, Dr. Gidman stated that the plaintiff could report to him "as needed" for further medical treatment. We reason that the plaintiff was not released unconditionally from the care of his treating physician, Dr. Gidman. Also, based on his examination of the plaintiff, Dr. Cobb opined that the plaintiff would require further surgery before he is capable of returning to work.
After reviewing the evidence in the record, we conclude that the plaintiff will require further medical treatment to resolve his physical complications. Therefore, because the plaintiff will incur future medical expenses associated with his work-related injury, we find that the plaintiff is entitled to *729 additional medical benefits. We further find that the workers' compensation judge was manifestly erroneous in its denial of additional medical benefits to which the plaintiff is entitled. Moreover, the factual findings of the workers' compensation judge are not adequately supported in the record.

IV.

CONCLUSION
Based on the foregoing reasons, we reverse the judgment of the workers' compensation judge insofar as it denies the plaintiff's claim for additional compensation benefits regarding his future medical expenses. We affirm all other aspects of the judgment. All costs of this appeal are assessed against Southern Structures, Inc., and Business Insurance Company.
REVERSED IN PART AND AFFIRMED IN PART.
DECUIR, J., concurs in the result.